Haller Baking Company, Appellant, *v.* Rochester Borough et al.

502

Argued April 17, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Thompson Bradshaw*, of *May & Bradshaw*, with him *Raymond D. Evans, Frank E. Reed* and *A. B. Stevenson*, for appellant.

*George A. Baldwin*, for appellees.

Opinion by Stadtfeld, J., July 18, 1935:
This is a bill in equity to restrain defendant, a mu-

nicipal corporation, from the enforcement, by information and arrest, of the provisions of Section "E" of its ordinance No. 505, amending ordinance No. 493. The original ordinance, adopted and approved November 20, 1928, is entitled: "An ordinance of the Borough of Rochester, County of Beaver and State of Pennsylvania, regulating, taxing, licensing, and prohibiting certain matters, persons, places, and things legally subject thereto."

Section "E" of the amendatory ordinance No. 505, approved December 30, 1933, reads: "E. It shall be unlawful to hawk or peddle any meat, fish, oysters, fruit, vegetables, ice cream, milk, bread, pastries, patent or proprietary medicines, books, papers, magazines, novelties, or other goods, wares and merchandise without having obtained a license therefor and paying the following license fee: $2 per day, $10 per week or $25 per month per person on foot; $3.50 per day, $20 per week or $60 per month for any horse-drawn or motor vehicle containing one person; $2 per day for each additional person on such horse-drawn or motor vehicle."

Defendant borough had on several occasions caused the arrest of drivers of plaintiff, charged with having violated the quoted ordinance by not having procured the license and paid the fees as provided therein. A bill to restrain the enforcement was filed, with affidavits and bond, and a preliminary injunction issued. A preliminary hearing was had before McConnel, J., on June 7, 1934, and, after hearing, on July 21, 1934, the court filed an opinion and made an order dissolving the preliminary injunction. The instant appeal is from the order of the court dissolving the preliminary injunction.

Plaintiff, a Pennsylvania corporation, with principal office and place of business in the city of Pittsburgh, Allegheny County, has been engaged for a number of years in the manufacture, sale and delivery direct to the consumer of bread, cakes and other bakery products.

It has three plants, and a fleet of more than 120 motor trucks operating in Allegheny, Beaver, and Westmoreland Counties. For several months prior to hearing, and since, it has been operating two motor trucks in defendant borough. Each of plaintiff's trucks serves an established route, with regular customers, who have standing orders with plaintiff for the delivery of goods, largely bread, from day to day. If a regular customer on the day of delivery desires additional goods, and the driver has them on hand, he will make immediate sale and delivery thereof.

In making routine delivery of ordered goods, the driver displays in addition, available goods, such as cakes and pastry, which are carried in a basket when he enters the home. He will at once honor any purchases that his customer may make. Credit is extended to customers on the company's responsibility, but collections are made by the driver. His daily truck load is made up from order sheets filed with the company the day before. Plaintiff has about 150 customers in defendant borough.

A new market is opened, or new routes are established, or old routes are extended, by sending out an advance truck with two solicitors, who display the goods from house to house seeking orders, but without at that time making any sale or delivery. On occasions regular drivers on established routes will, if solicited, accept an order or make a sale to one not a regular customer, and this is done for the purpose of procuring a regular customer. It is against the instructions of the company for the solicitors on the advance trucks to make immediate sales and deliveries.

The plaintiff corporation is carrying on this business on a large scale, and has a large capital investment in an established business of many years standing.

Defendant caused the arrest of plaintiff's driver on six occasions.

Appellant, in its bill, claimed that its business as conducted in the Borough of Rochester aforesaid is not in violation of any law of this Commonwealth, nor does such business render plaintiff, its servants, agents or employees, subject to any license fee, fines or penalties under any ordinance of the borough of Rochester, or under the law of this Commonwealth; that said ordinance No. 493, as amended by ordinance No. 505, Section "E," has no application to business of plaintiff; that the business of plaintiff is not in violation thereof, the information and arrests procured by the defendants are without authority of law and constitute a continuing nuisance and unlawfully interfering with plaintiff's business.

Appellant contends, (1), that the ordinance in question is invalid, because the license fees are unreasonable, prohibitive and confiscatory and so offending against Section 1, Article 1 of the Constitution of Pennsylvania and Articles 5 and 14 of the Federal Constitution; that under the guise of regulating and controlling peddling it unlawfully endeavors to prohibit a business of the kind being carried on by plaintiff in the way it is being carried on, by imposing unreasonable and confiscatory license fees; (2), that appellant's business is exempt from regulation by Borough Ordinance because of the provisions of the Act of May 9, 1889, P. L. 150; (3), that the ordinance, as enforced, is trade discrimination and therefore invalid.

(1) The first question for our consideration is whether the business of appellant as conducted by it comes within the inhibition of hawking or peddling as construed under the laws of this State. In order to determine this question we should consider the legislation dealing with hawking and peddling and the decisions in the construction of said statutes.

As early as 1730 we had in Pennsylvania an act of the legislature regulating peddlers, in the preamble of

which the legislature pointed out the evils to be eliminated and the type of persons at which the act was aimed, to-wit, "idle and vagrant persons ...... who under the color of selling their wares and merchandise have entered into the houses of many honest and sober people in the absence of the owner or owners of said houses and committed felonies or misdemeanors." Other acts dealing with the same subject are the act of March 30, 1784, 2 Smith Laws, 99, the act of April 2, 1830, P. L. 147, the act of April 16, 1840, P. L. 433, the act of May 9, 1889, P. L. 150.

Section 1, Act of March 30, 1784, 2 Smith Laws 99, declares: "Whereas many idle and vagrant persons may come into this state, and under the pretence of being hawkers or pedlars, may greatly impose upon many persons ......". The act then provides for protecting the public from such fraudulent practices upon them by forbidding any person to engage in the business of peddling without a license. Commenting on this in Commonwealth v. Gardner, 133 Pa. 284, 19 A. 550, at page 291, Mr. Justice WILLIAMS says: "It is very clear that this prohibition was not directed against the farmer and his truck wagon, but against the itinerating vendor who carries his goods on his back, or in a cart or wagon, in search of customers. It was directed against him for the protection of the public against the impositions practiced by the class of dealers to which he belongs, in regard both to 'the quality and price of goods' carried by them, and against the commission 'of felonies and misdemeanors' by the vagrant persons who traveled the country 'under pretence of being hawkers and peddlers.' "

And on p. 289, in referring to the business of the peddlers, the court says: "The peddler is a transient, with no fixed place of business, who seeks customers by invading their homes, and makes sales by persuading people to buy what they do not need, and who, by the

time he is wanted to answer for his representations and engagements, is out of sight and out of reach of process. It is this matter of tracking a laboring man or woman into the home, and laying siege to him or her by an unscrupulous and self-possessed stranger, who is after money and has no delicate scruples about the manner in which he gets it, that has made the peddler a dread in the country and in the villages, and has led the law makers in this and other states to put the business under strict regulations when it is not wholly forbidden."

In the case of Commonwealth v. Roenick, 31 P. L. J. (N. S.) 191, the late Judge SHAFER of the Common Pleas Court of Allegheny County held that a butcher whose principal business is selling beef, slaughtered by himself, at his shop, and also from his wagon to his customers and others, in the borough of Tarentum, is not a hawker or peddler. Quoting from his opinion: "The only question to be decided is whether or not the business of the defendant as described can be properly classed as hawking or peddling. A hawker is one who sells goods by outcry through the streets. The defendant did not do so. What is meant by peddler is more difficult to state with precision. In common acceptance, a peddler is one who carries about on his person or in a vehicle small articles which he endeavors to sell by solicitation of persons in the street or from house to house. His business is subject to police regulation, because of the inconvenience and annoyance inflicted by it, because he is often or usually a 'transient with no fixed place of business, who seeks customers by invading their homes and by the time he is wanted to answer for his misrepresentations and encroachments, he is out of reach of process: Commonwealth v. Gardner, 133 Pa. 289.' "

In Commonwealth v. Brinton, 132 Pa. 69 (1890) p. 73, 18 A. 1092, the court said: "The recital in the earlier

acts shows, by the express declaration of the lawmakers, what is quite apparent from the nature of the several provisions they contain, that the purpose of the legislation was the protection of society from the lawless, able-bodied wanderer, whose presence is a source of apprehension in any community. To refuse a license, which would serve as an excuse for visiting private houses and securing access thereto, to the able-bodied stranger, was an exercise of police power . . . . . .".

In Emaus Borough v. Kinkle, a case which arose in the Court of Quarter Sessions of Lehigh County (1933), reported in 15 Lehigh County Law Journal 205, upon facts identical with, those in the instant case, Judge RENO held that the bread man is not a transient retail merchant. Said the court: "There is nothing transient about his (the defendant's) business; he does not sell in Allentown today, in Emaus tomorrow and in Macungie the next day and then proceeds to more distant points, returning to Allentown, Emaus, and Macungie at some unknown indefinite date, or perhaps, not at all, like the old-time peddler or hawker, the itinerant merchant, who filled a wagon with wares and kept on going from place to place until he had sold them. He is in Emaus regularly day after day, just as is the town's butcher, its baker, or its candlestick maker. That his goods are not made or stored in Emaus or exposed to sale in a permanent market there, is beside the point. 'Transient', as used in the legislation, means 'one who stays for a short time, not regular or permanent'. This defendant is a regular vendor in Emaus and he has a permanent business there. In no sense is he a transient retail merchant."

In Commonwealth v. Eichenberg, 140 Pa. 158, 21 A. 258, a case which arose under a special act applying to Lehigh County relating to peddlers, the court said: "The alderman gave judgment in favor of the defendant, in which he was clearly right, as the evidence which

he sets forth upon the face of his transcript shows very conclusively that the defendant was not a peddler, ...... On the contrary, he kept a store in the city of Allentown, and merely solicited orders through the county of Lehigh for his goods. ...... We do not understand the act of 1869 to interfere with a merchant, having a fixed place of business, soliciting orders from persons either in the town where his store is located or elsewhere."

An examination of the fees imposed by Section "E" of the ordinance shows a scheme of graduated fees or taxes, depending on the length of time the license is to run, the number of workmen engaged therein, and the manner of conducting the business. The schedule of fees applied to the plaintiff's business as it is now carried on in defendant borough produces the following: 1 Truck, with 1 employee thereon, $720 per annum; 2 Trucks, with 1 employee thereon, $1440 per annum; 2 Trucks, with 2 employees each, $2668 per annum.

The present extent of operations in defendant borough is for the truck to carry a single employee, so that the fixed minimum charge to this plaintiff per annum in Rochester Borough at this writing is $1440.

The rule that a municipality may impose a fee in excess of the mere cost of issuing the license, or of policing the business, has this limitation that if the business be not injurious, and not against the public interest, the fees cannot be so excessive as to be prohibitive. Either the borough of Rochester is intending to license a legitimate business by reasonable fees, or is intending to suppress an injurious business by prohibitive fees.

"The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to

the supervision of the courts."—Lawton v. Steele, 152 U. S. 133.

"The mere restriction of liberty or property rights cannot, of itself, be denominated 'public welfare' and treated as a legitimate object of the police power:" Coppage v. Kansas, 236 U. S. 1, 59 L. Ed. 441.

Where legislation depends for its validity upon the exercise of police power, such legislation must be regulation in character and the fee provided must be of such size as to indicate clearly that the act was meant to be purely a regulatory police measure and was not intended to provide revenue. "If from a consideration of an ordinance or law it is clear that it was primarily designed as a means of raising revenue, the burden thus imposed must be treated as a tax, and not a license; and such an enactment cannot be considered as an exercise of the police power. ...... The amount of the license fee or charge is to be considered in determining whether the exaction is one for regulation merely, or for revenue, ......". 17 R. C. L. 543, 544.

If this ordinance is to be sustained as a police regulation, it will have to be justified as a reasonable exercise of such power. Mr. Justice KEPHART, in White's Appeal, 287 Pa. 259, 134 A. 409, (at page 264), said: "...... there should be a reasonable and substantial relation between the thing acted on and the end to be attained, one that promotes health, safety, or general welfare, necessary to the common good, and a reasonable demand for regulation, not one that is merely an unnecessary 'experimentation (or interference) with the fundamental rights of the individual:' Truax v. Corrigan, 257 U. S. 312, 338.

"While the tribunal to determine the proper exercise is in the first instance the legislature, the ultimate decision rests with the courts. If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its

exercise goes too far, it then becomes the judicial duty and declare the given exercise of the police power invalid: Nolan v. Jones, 263 Pa. 124, 127; Miller v. Los Angeles, 234 Pac. (Cal.) 381; Walls v. Midland Carbon Co., 254 U. S. 300. 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts:' Lawton v. Steele, 152 U. S. 133, 137. The power of judicial investigation does not concern itself with the wisdom of the policy emanating from the legislative branch, or whether the best of all possible means of achieving the desired result has been selected. It is concerned only with the questions of whether the statute has a recognized police purpose, and whether it has a reasonable relation to the object to be attained."

As stated in 21 R. C. L. 192, "And a grant of authority to impose fees for the purposes of revenue will not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose."

An examination of the ordinance does not indicate any provision for supervision or regulation of the licensee. It clearly provides for an assessment of taxes for revenue purposes, and is not an exercise of police power as a means of regulation only, and can not be sustained as such.

The development of appellant's business is typical of the growth of merchandising in modern times. It is not in accord with modern conditions to extend to the business carried on by appellant, the definition of peddling as it obtained in earlier days in this commonwealth. In applying the law to the facts of the instant case we must take into consideration a changing economic and social order.

(2) Is appellant's business exempt from regulation by Borough Ordinance because of the provisions of the Act of May 9, 1889, P. L. 150? The Act is entitled "An Act to amend an act, entitled 'An act supplementary to the acts regulating hawkers and peddlers,' approved the sixteenth day of April, A. D. 1840." After providing for certain penalties on persons hawking and peddling without being licensed, the act contains a proviso "That this act shall not be construed to prevent citizens of this Commonwealth from hawking and peddling goods of their own manufacture, by themselves or through their authorized agents."

It has always been the policy of this Commonwealth to protect and encourage manufacturers who are citizens of this State. This has been particularly manifest in relation to the legislation relating to hawking and peddling. This first act for regulating peddlers, etc., was passed in 1729 (30), but was repealed by the Act of 1830. The next act on the subject was passed in 1779 (March 28, 3 Sm. L. 359), but was limited to continue no longer than the war.

The Act of 1784 (March 30; 2 Sm. L. 99), for regulating of hawkers and peddlers provided that, ...... Nothing herein contained shall extend, ...... to hinder any person or persons ...... from carrying about, from town to town, and from house to house, any goods, wares or merchandise being of the growth, product or manufacture of this state ......."

The Act of 1830 (April 2, P. L. 147), for regulating hawkers and peddlers, provided: "That nothing contained in this act shall prohibit the citizens of this Commonwealth, who may manufacture goods, wares or merchandize within this commonwealth, from vending or exposing the same to sale ......"

The Act of 1840 (April 16, P. L. 433), being supplementary to the acts regulating hawkers and peddlers, provides: "That this Act shall not be construed to pre-

vent citizens of this Commonwealth from Hawking and Peddling goods of their own manufacture."

The Act of 1901 (June 14, P. L. 563), for the licensing of hawkers and peddlers in the counties of the Commonwealth, excepting cities of the first, second and third class, and excepting existing local and special laws, provides: "That this act shall not apply to any person or persons, nor alter existing laws, in the hawking, peddling or selling goods, wares and merchandise, where the manufacturer or producer hawks, peddles or sells his own manufactured goods or products:"

Appellee contends that the Borough Code of 1927 and its supplements, under which the instant ordinance was enacted, does not exempt manufacturers from its operation, and that the Act of 1889, supra, amending the Act of 1840, supra, have been repealed by the Borough Code, which provides, inter alia, after specifically by reference repealing 96 other acts, "All other acts or parts of acts of assembly supplied by, inconsistent with, or appertaining to the subject matter covered by this act are hereby repealed. It is the intention that this act shall furnish a complete and exclusive system for the government and regulation of boroughs."

The Borough Code of 1927 contains no repealing clause of the Act of 1889 supra. "Repeal by implication is not favored; ...... such an interpretation, therefore, is not to be adopted unless it is inevitable:" Endlich on Interpretation of Statutes, Sec. 210; Keller v. Staley, 78 Pa. Superior Ct. 184. In 59 Corpus Juris, 909, Sec. 512, we find the principle stated as follows: "Where a statute expressly repeals specific acts, there is a presumption that it was not intended to repeal others not specified. In such case there is an implied approval of the statutes not specified, as well as evidence of an intention to leave them undisturbed, and the doctrine of implied repeal does not apply."

There is nothing in the Borough Code of 1927, and

its supplements, which is contrary to or in any way inconsistent with or repugnant to the Act of 1889. The fact that the legislature failed to repeal any part of the Act of 1889 shows its implied approval, and is evidence of its intention to leave it undisturbed. The Act of 1889 states the settled policy of the Commonwealth and that policy is consistent with anything appearing in the Borough Code.

In Commonwealth v. Bauer, 24 Dist. Rep. 210, the court held a Philadelphia ordinance, which made it unlawful for any person to hawk, peddle or vend fish, fruit ...... general products ...... or any wares or merchandise of any description whatsoever, so far as it affects the vending by manufacturers in the Commonwealth of articles of their own manufacture, is in conflict with the act of 1889, and therefore void. The court said: "It is a well-settled rule of law, universally applicable, that a municipal ordinance is nothing more or less than a by-law of a municipal corporation. A municipal corporation is a creature of the Commonwealth, and the municipality, by the action of the legislature of the Commonwealth, approved by the governor as the chief executive, could, for proper reasons, be changed, or even repealed, and as such municipality, it would have 'no more right to enact an ordinance which is in conflict with the common or statute law of the state than has any other corporation chartered by the authority of the state.'

"It is also equally as well settled as a principle of law 'that what the state has licensed, or expressly confirmed, the municipality cannot forbid.'

"It has always been the policy of the Commonwealth of Pennsylvania, in the interest of its trade and commerce, to permit the manufacture of goods within the state, and his authorized agent, to hawk and peddle such goods so manufactured in the state at will, as the municipal corporation derives whatever power it has

from the sovereignty of the state, and as a creature of the state 'it must always be subject to the will of its creator.' Hence, an ordinance of a municipality is 'but the product of the legislative power conferred upon it, and if such ordinance transcends the power given to it by the legislature,' it is bad." To same effect see City of Franklin v. Williams, 21 D. & C. 422.

In MacQuillan Municipal Corporation, 2nd Edition, Vol. 2, Sec. 685, Page 572, we find: "A municipal corporation cannot, without special authority, prohibit what the policy of a general statute permits. Nor, on the other hand, can an ordinance permit that which the state's policy forbids. Consequently, under a general grant of power, a municipal corporation cannot adopt ordinances 'which infringe or are repugnant to the policy of the state as declared in its legislation.' It thus follows that if the state has expressed through its legislation a public policy with reference to a subject, a municipality cannot ordain in respect to that subject to an effect contrary to, or in qualification of the policy so established 'unless there is a positive, specific, lawful grant of power by the state to the municipality to ordain otherwise in which event the specific, positive, lawful grant is from the source of authority that may and has been, expressed through legislation, the policy of the state.'"

For a learned and comprehensive discussion of the matters discussed supra, see opinion of SOFFEL, J. in Borough of Bellevue v. Haller Baking Co., 83 P. L. J. 197.

Under the provisions of the Act of 1889, appellant company is exempt from license fees under the ordinance in question. In justice to the lower court, it should be noted that the applicability of the Act of May 9, 1889, supra, does not seem to have been pressed in the lower court. The bill of complaint, however, attacked the general validity of the ordinance in ques-

tion, and averred that the ordinance has no application to the business of plaintiff. Nothing could be gained by sending this case back for a final hearing so far as the disposition of the questions now before this court are concerned.

Since the taking of this appeal, an Act of Assembly was passed and approved May 9, 1935, being No. 67, under which the business of appellant as a manufacturer and producer in the sale of bread and bakery products is exempt from the necessity of being licensed as transient retail business.

(3) The alleged discrimination in the enforcement of said ordinance as averred in the bill is not properly before us at this time. It would require a finding of fact upon final hearing before we can pass upon that feature.

The first and third assignments of error are sustained, the decree of the lower court is reversed, the injunction reinstated, and the case is remitted to the lower court for proceedings and decree not inconsistent with this opinion.