Rock, Appellant, *v.* Philadelphia et al.

144

Argued October 23, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*B. D. Oliensis,* with him *Jacob Kossman* and *Alexander Perry,* for appellant.

*Samuel Feldman,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellee.

OPINION BY CUNNINGHAM, J., April 23, 1937:
Appellant, a registered and licensed master plumber in the City of Philadelphia since 1925, in order to be re-registered for the years 1932, 1933 and 1934 paid to the city an annual fee of $25. for registration and licensure and an additional fee each year of $5. for the approval of his bond in the amount of $250. These fees were collected from him by virtue of the provisions of the Act of May 7, 1931, P. L. 101, amending Secs. 1 and 2 of the Act of June 7, 1911, P. L. 680, 53 PS §4071, by increasing the annual registration fee from $1. to $25. and requiring the giving of the bond above mentioned.

 Contending that the Act of 1931, supra, was unconstitutional, appellant filed his bill in the court below to

restrain the defendant city officials from enforcing its provisions and to require them to refund $24. out of each fee of $25. collected from him and to return the three $5. fees paid for the approval of his bonds. The city filed preliminary objections in which they averred the legislation under which the moneys had been collected was constitutional.

Pending argument, the legislature further amended Secs. 1 and 2 of the Act of 1911, supra, by an act approved July 2, 1935, P. L. 561, 53 PS (Supp.) §4071. By this amendment the annual registration fee was reduced to $3. and the bond requirements of the Act of 1931 were eliminated.

The Act of 1911, supra, provides for the examination and registration of plumbers and regulates the business of plumbing in cities of the first class, making it unlawful for any person to engage in that business without first having registered and obtained a license. Under this act and later amendatory acts plans must be filed, inspection made and approval given by the Department of Public Health, for the various types of plumbing work covered thereby. By its second section the annual fee for registration or re-registration was fixed at one dollar for master plumbers. As stated, the Act of 1931, supra, increased the fee to $25., and provided for a bond.

It was averred in the bill that there were approximately 1600 plumbers registered for each of the three years in question; that "the total revenue derived by the City of Philadelphia from registration and re-registration fees of $25. each ...... was approximately $40,000 per year; and that the total expenditures incurred annually ...... in connection with said registration, re-registration and licensing of the said master plumbers, and the maintenance of said registration and

license service ...... never [exceeded] the sum of $4000."

Plaintiff also alleged that the provision of the Act of 1931, supra, requiring him to give bond in the sum of $250., "...... conditioned to indemnify the city and property owners against loss by reason of [his] failing to comply with the acts of assembly and the rules and regulations of the Department of Public Health in the performance of the work done by [him] ......", was unconstitutional and void.

After argument upon the preliminary objections the court below held the provisions of the Act of 1931 attacked by the bill constitutional; this appeal from the decree dismissing the bill followed.

Appellant does not contend that the state may not, under its police power and in order to protect the health of its citizens, enact legislation regulating the plumbing business. Legislation of this type has frequently been upheld as within the state's police power: *Beltz v. Pittsburgh,* 211 Pa. 561, 61 A. 78, affirming the decision in 26 Pa. Superior Ct. 66, (holding the Act of June 7, 1901, P. L. 493, regulating plumbing in cities of the second class constitutional as an exercise of police power and a proper subject for municipal classification); and *New Castle City v. Withers,* 291 Pa. 216, 139 A. 860, 57 A. L. R. 132, to the same effect as applied to cities of the third class. See also the cases cited in 36 A. L.R. 1342, dealing with the "Validity of regulations as to plumbers and plumbing", and cases cited under the same heading in 57 A. L. R. 132, 136, supra, and in 17 R. C. L. page 550, section 63.

Conceding the state's inherent power in this regard, appellant's contention is that the charge of $25. for registration is not so reasonably proportionate to the cost of regulation or supervision of the plumbing business by the city as to constitute it a *license fee* and there-

fore within the police power of the state to impose, but is so unreasonable as to amount to a *tax imposed for revenue purposes* and therefore subject to the various constitutional limitations upon taxation.

A revenue tax may not be imposed under the guise of a police regulation, and this principle applies equally to the state or a municipality as a subdivision thereof. As Mr. Justice ELKINS stated in *Kittanning Boro. v. American Natural Gas Co.*, 239 Pa. 210, 86 A. 717: "If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax". There it was held that an ordinance providing for a fee of $30. per mile for inspection of underground mains of the gas company was properly submitted to the jury on the question of reasonableness of the fee imposed; a verdict for plaintiff in the same case was affirmed—247 Pa. 65, 93 A. 15. In *Pittsburgh Rys. Co. v. Pittsburgh*, 211 Pa. 479, 60 A. 1077, the court held an ordinance imposing a charge of 25 cents per foot on all street car tracks within the city invalid as being a tax and not a license fee. *Postal Telegraph-Cable Co. v. Taylor*, 192 U. S. 64, 48 L. ed. 342, 24 Superior Ct. 208, is a case in which a "license fee" of twenty times the amount of the probable cost of inspection was held unreasonable as a matter of law and declared invalid because it was a tax rather than a police regulation. See also *Haller Baking Co. v. Rochester Boro.*, 118 Pa. Superior Ct. 501, 180 A. 108, where this court held "license fees" amounting to $1,440 per year, which were aimed at bakers and other tradesmen from outside districts who had delivery routes within the borough, were really an assessment for tax purposes and not a means of regulation under the police power. The distinction between a license fee imposed under the police power for the purpose of regulation and a tax

imposed for revenue is set forth at length in *State v. Anderson,* 144 Tenn. 564, 234 S. W. 768, 19 A. L. R. 180. As stated in 4 Cooley on Taxation (4th Ed.) page 3552, Sec. 1809, "A fee for the license ...... must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers."

However, a license fee imposed by or in pursuance of legislative enactment is presumed to be reasonable, and it is incumbent upon the party alleging its invalidity to show facts which make it so: *Kittanning Boro v. American Natural Gas Co.,* supra, and cases cited at page 213; *City of Pittsburgh v. Streng,* 90 Pa. Superior Ct. 288, and cases cited at page 291, (license fee of $150. per year for junk dealers held a reasonable regulatory license fee in the absence of evidence to the contrary, and a valid regulation by second class cities in the exercise of their police power); *Chambersburg Boro. v. Chambersburg Gas Co.,* 38 Pa. Superior Ct. 311, 317, (borough ordinance requiring fee of $5. per 100 feet for extension of gas mains held reasonable); *Gettysburg Boro. v. Gettysburg Transit Co.,* 36 Pa. Superior Ct. 598 and cases cited page 608,—fee of $50. on each of three street cars held a valid exercise of police power by the borough, the court stating that the burden of proving the fee unreasonable was on the company and pointing out that the fact other license fees were exacted for inspecting the poles of the company was relevant evidence in determining whether the inspection fee on cars was reasonable. In *Western Union Telegraph Co. v. New Hope,* 187 U. S. 419, 47 L, ed. 240, 23 Pa. Superior Ct. 204, the Supreme Court of the United States sustained a license fee of $1. per pole and $2.50 per mile of wire within the borough limits, and, quoting from the opinion of this court in the same case [16 Pa. Superior

Ct. 306, 309], said, "...... the courts will not declare such ordinance void because of the alleged unreasonableness of the fee charged, unless the unreasonableness be so clearly apparent as to demonstrate an abuse of discretion on the part of the municipal authorities."

Whether or not a particular license fee is reasonable depends of course upon the type of business licensed and the extent of regulation undertaken. In *City of Tucson v. Stewart* (Ariz.) 40 Pac. (2nd) 72, 96 A. L. R. 1492, the court, quoting at length from *Fletcher Oil Co. v. Bay City*, 247 Mich. 572, 226 N. W. 248, 250, stated (p. 77): "The imposition of license fees as a condition to issuing a license when plainly intended as police regulations will be upheld if the revenue derived therefrom is not disproportionate to the cost of issuing the license and the regulations of the business licensed. Anything in excess of an amount which will defray such necessary expenses cannot be imposed under the police power alone, because it then becomes a revenue measure. What is a reasonable license fee must depend upon the sound discretion of the legislative body imposing it having reference to the circumstances and necessities of the case. It will be presumed the amount of the fee is reasonable unless it contrarily appears upon the face of the ordinance, by-law, or law itself, or is established by proper evidence. In determining whether a fee required for a license is excessive or not, the expense or amount of regulatory provisions and the nature of the subject of regulation should be considered, and, if the amount is wholly out of proportion to the expense involved, it will be declared a tax. If revenue is incidentally derived which is not so disproportionate as to make the fee charged unreasonable there can be no objection."

In the case just cited the court held invalid a city ordinance, providing, inter alia, for a license fee of $60. a year for the first year and $30. thereafter for the regis-

tration of electricians, as being a revenue measure and beyond the police power of the municipality; but it was pointed out that the electrical code of the city provided other charges for inspection, viz., $2. per hour for the time actually spent by the city authorities in inspecting. *Detroit Retail Druggists Assn. v. City of Detroit*, 267 Mich. 405, 255 N. W. 217, is a case in which the court sustained as reasonable a license fee of $5. per year imposed by municipal regulation on all vendors of cigarettes within the city, although it was shown that the annual costs of inspection to the city was approximately $1.38 for each vendor.

Applying these principles to the case now at bar, we have this situation. Appellant had the burden of showing in the court below that the fee was wholly out of proportion to the expense of the municipality in regulating the installation and maintenance of plumbing throughout the entire city. The facts averred in his bill must, for present purposes, be considered as established and we may assume that he has pleaded his whole case.

His argument is that only the actual cost to the city of the registration and licensing of plumbers may be considered in determining the reasonableness of the fee, and, as his bill alleges only one tenth of the amount collected was actually expended for that purpose, it should be held so unreasonable as a matter of law as to amount to a tax for revenue. But the costs of registration are not the only ones entering into a determination of the reasonableness of the license fee. In *Pottsville Boro. v. Pottsville Gas Co.*, 33 Pa. Superior Ct. 480, upon which appellant chiefly relies, this court, speaking of a borough ordinance imposing a fee of $3. upon all persons making street excavations, said (p. 486), "It follows that, in determining the reasonableness of the charge, not only the direct expense of issuing and making a

record of the permit ...... but also the indirect expense of maintaining the organization required to perform the subsequent duty of inspection and supervision, may properly be considered." It is true this court there reversed a verdict for the plaintiff borough because the trial court permitted the jury to consider as part of the cost of inspection the cost of repairing any pavement not properly replaced by the company, but the reason for so doing was that the company, under its charter, was liable to the city for the cost of repairing any excavations made by it. The case is not authority for appellant's position. In *Pittsburgh Rys. Co. v. Pittsburgh,* supra, the court below in its opinion, written by the late Chief Justice FRAZER when in the common pleas and approved by the Supreme Court, stated (p. 483), "The elements to be considered are the expense incident to the issuing of a license and the probable expense to the municipal authorities in regulating, inspecting and affording police surveillance of the maintenance and operation of the corporation's lines."

The license fee therefore may properly include not only the actual cost of registration, but also any reasonably probable cost of supervision, inspection, examination or regulation which may be carried on by the city. An examination of the Act of 1911, and its amendments in force at the time appellant's bill was filed, discloses that it provides a comparatively comprehensive system of regulation for the plumbing business in cities of the first class. Section 5 provides for the filing of plans in connection with the construction of plumbing work in any building (subject to certain exceptions), and their rejection or approval by the Department of Public Health. Section 7 provides for inspection of drainage, sewage or plumbing work by the city authorities before it is covered over. These, and other sections of the act, show that registration is far from being the only super-

152

vision undertaken by the city the cost of which may properly be included in the license fee. An illustration of the application of the principle here involved is found in *American Baseball Club of Philadelphia v. Philadelphia,* 312 Pa. 311, 167 A. 891, 92 A. L. R. 386, where our Supreme Court, in holding valid as a license fee a charge on the owner of a public ball park based on a reasonable estimate of the number of policemen necessary to police the grounds at each game, said (p. 316) : "A license fee is valid if the amount thereof is reasonably commensurate with the actual cost to the municipality for special services rendered (citing cases)". Again, in *Postal Telegraph-Cable Co. v. Taylor,* supra, the court stated (p. 70) : "...... the municipality is at liberty to make the charge enough to cover any reasonably anticipated expenses, and payment of the fee cannot be avoided because it may subsequently appear that it was somewhat in excess of the actual expense of the supervision, nor can the company then recover the difference between the amount of the license fee and such cost."

*Agnes v. Sioux City,* 182 Ia. 783, 166 N. W. 280, is a case comparable on its facts and persuasive on the question of the reasonableness of the license fee here charged. There, plaintiff, a master plumber, on behalf of himself and as assignee of twenty-three other master plumbers, sued the city to recover an allegedly illegal annual license fee of $50. paid to the city for four years in pursuance of an ordinance enacted under authority of a statute, for the registration of each master plumber. The Supreme Court of Iowa held the fee charged was a reasonable license fee, not a tax for revenue purposes imposed under the guise of a license, it appearing that the gross receipts from the fees were about $2000 yearly and that the city employed a plumbing inspector at a salary of $115 per month.

Our conclusion as to the $25. fee is that appellant has not pleaded a state of facts from which a court could determine as a matter of law that these fees were so disproportionate to the reasonably probable expenses of licensure and regulation as to make them taxes for revenue purposes.

Concerning the fees for the approval of appellant's bonds, a similar requirement for electrical contractors was held valid in *City of Tucson v. Stewart,* supra. The court there reviewed numerous cases on this subject, including cases where the municipality required bonds of plumbers, and pointed out that although there is a split of authority on the point the better reasoning holds such a requirement valid as within the police power. The statutory requirement for the bonds in the present case was, we think, valid under our constitution; it was not a local or special law, as appellant contends, because the bond was conditioned upon the observance of the plumbing code regulations, and these being admittedly valid, a bond so conditioned is based on such a substantial distinction as would prevent the law requiring it from being considered special or local legislation. The result might be different had the bond been conditioned merely to indemnify property owners for any damage done in the course of the plumbing work.

Having concluded, for the reasons stated, that the fees imposed by the amendatory Act of 1931 were reasonable license fees, it is unnecessary to consider the additional questions argued in the briefs.

Decree affirmed at the costs of appellant.