## Commonwealth ex rel. v. Bradley

*Thomas E. Barton,* for City of Pittsburgh.

*Thomas W. Pomeroy, Jr.,* and *Reed, Smith, Shaw & McClay,* for defendant.

SOFFEL, J., September 30, 1940.—Paul R. Bradley, defendant, was arrested on April 13, 1940, charged with violation of ordinance no. 181 of the City of Pittsburgh, approved June 27, 1935. The title of the ordinance reads as follows:

"An Ordinance to provide for the licensing, by the city treasurer, of vending slot machines and other lawful devices designed and used for amusement and entertainment, after application to, and investigation by the bureau of police."

Section 1 authorizes and empowers the city treasurer "to issue a license or licenses to any person or persons, firm or corporation, for the use or operation in any place or location or within any building, whatsoever, within the City of Pittsburgh, of a vending slot machine wherein any coin is inserted, thereby producing therefrom a certain and uniform return in value for the coin so de-

posited, such as a piece or package of confectionery, article of toilet (except sanitary napkins), card or picture, or other designated article which said vending slot machine is specifically manufactured to lawfully produce. These provisions as to regulations and charges relative to licenses shall also apply to the use and operation of machines or apparatus designed and used and operated solely as games for amusement and entertainment. No person not a citizen of the United States shall be granted a license for the use or operation of any slot machine."

Section 2 provides that personal application for the license or licenses must be made to the bureau of police in the department of public safety. The matters required to be set forth in the application are designated. The section then goes on to provide: ". . . and if, after proper investigation by said bureau, the application is approved, the city treasurer shall be notified of such approval, and shall thereupon grant a license for each separate machine or apparatus for a period of one year, or part thereof, upon the payment by the applicant or applicants of a license fee of one ($1.00) dollar per annum for each machine, which license shall expire on the last day of December following the granting thereof; Provided, That these regulations and charges relative to license shall not apply to automatic collection devices in connection with telephone or gas meters."

Section 3 provides that when the license is granted and the fee paid the city treasurer shall issue a metal plate to the applicant, which must be exposed in a conspicuous place on each machine licensed.

Section 4 authorizes any policeman of the City of Pittsburgh, upon view or information made, to issue a warrant and arrest any person violating the provisions of the ordinance. It provides further, upon conviction before any police magistrate or alderman of the City of Pittsburgh, for a fine of $10 for each offense, and, in default thereof, imprisonment in the Allegheny County jail or workhouse for a period of not more than 10 days.

Section 5 provides for the revocation of license by the city treasurer upon conviction under section 4 of the ordinance, and that no license shall issue thereafter until three months have elapsed.

Section 6 is the general repealing clause.

After a hearing before a police magistrate, at which he pleaded "not guilty", defendant was convicted of violating said ordinance in that on April 13, 1940, and on other days prior to such date, he unlawfully placed devices, automatic machines, namely, chewing gum, peanut, and candy machines, at certain places of business on the Boulevard of the Allies, in the City of Pittsburgh, without first securing licenses to operate said machines. A fine of $10 was paid to the city and an appeal taken to the County Court of Allegheny County. Counsel for defendant, at the trial before the County Court, moved to quash the information and to dismiss the proceedings for the reason that ordinance no. 181, providing for licenses, is invalid. The motion was refused, testimony of defendant taken, decision reserved, briefs filed, and subsequently argument had. The case is now before the court for consideration.

At the trial of the case the evidence adduced established the following facts:

Defendant is in the business of selling internationally known brands of candy bars, chewing gum, and salted peanuts through automatic machines called "canteens", which he leases from the Automatic Canteen Company of America, an Illinois corporation. He is the sole proprietor of this business, which is known as the Automatic Canteen Company of Pittsburgh. Some of the machines are of standard type and sell but one kind of chewing gum or nuts at a time. Others are of the selective type and sell two kinds of nuts and five kinds of chewing gum and candy. The machines are so constructed that they will not operate when empty, and there is no substantial possibility of purchasers getting less than they should have for their money. The name of the owner and the defendant's

firm name and address are given on each machine. Defendant's machines, located at three addresses on the Boulevard of the Allies, in the City of Pittsburgh, were not licensed in 1940. They did, however, bear a license tag of a previous year.

Mr. Bradley, defendant, testified that he had a $28,000 investment in his business over a 10-year period; that he operated 3,300 machines, 1,200 located in Pittsburgh at 479 different locations, no machines being located in public places and all placed on private property. The financial statement for the year ending December 31, 1939, showed gross sales totaling $198,604.65, cost of sales amounting to $116,355.43, operating expenses of $78,-864.93, including $4,825 paid to Mr. Bradley as administrative salary, and a net profit of $3,384.29. The net profit was accounted for by type of canteen as follows:

|  | Net Profit | Average Profit per canteen per yr. |
| --- | --- | --- |
| Candy | $2,460.72 | $1.84 |
| Standard Gum | 114.29 | .21 |
| Selective Gum | 290.54 | .64 |
| Standard Nut | 431.39 | .52 |
| Selective Nut | 87.35 | .79 |
| Total | $3,384.29 | |

The total revenue attributed to the City of Pittsburgh was one third of the total, or $1,128.10. If the license fee had been paid, the Pittsburgh business would have resulted in a loss of $72, and the net profit from the business as a whole would have been reduced from $3,384.29 to $2,184. All machines would have shown a loss except candy machines, where the profit would have been reduced from $1.84 to $0.84. Defendant testified that under those circumstances it would not be possible for him to continue in this line of business in the City of Pittsburgh.

Mr. Bradley testified that while licenses had been taken out in the year 1938, none had been taken out in subsequent years because he was advised that the ordinance

was invalid and that it had no application to locations on private properties. He stated further that in the years when licenses were taken out no investigation of any kind was made prior to the issuance of the licenses, but that same were received immediately on application and payment of fee. Defendant further testified that the cost to him of the products sold was the same as the cost to persons who might vend them through retail stores.

### Questions involved

1. Is ordinance no. 181 of the City of Pittsburgh, approved June 27, 1935, a police power measure or a revenue measure?

2. If a police power measure, is it invalid as being an unwarranted regulation which in this case has no relation to public health, safety, or morals?

3. If a revenue measure, is it unconstitutional for the reasons that (a) Its title is defective? (b) It is discriminatory and lacking in uniformity? (c) It is confiscatory?

1. *Is Ordinance a Police Power Measure or a Revenue Measure?*

Counsel for the City of Pittsburgh contends that the ordinance in question is a police power ordinance enacted under the authority of the Act of March 7, 1901, P. L. 20, art. XIX, sec. 3, cl. XLIII, 53 PS §9686, which reads as follows:

"To make all such ordinances, by-laws, rules and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufactures, and the same to alter, modify and repeal at pleasure; and to enforce all ordinances by inflicting penalties upon inhabitants or other persons for the violations thereof, not exceeding

one hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding thirty days, if the amount of said judgment and costs shall not be paid."

He argues that the ordinance in question is a proper exercise of police power under the authority cited. He points out the need to regulate automatic coin-operated machines and classifies them into five general classes:

1. Vending machines of the type under consideration;

2. So-called pin ball or amusement machines which may readily be used for gambling purposes;

3. Slot machines, which are outright gambling devices;

4. Machines which combine the outward appearance of (1) and (2), with the psychological attractiveness of (3), into which a person deposits a coin, receives merchandise, and, in addition thereto, a chance to win a valuable prize; and

5. Telephone coin boxes and other utility rate collecting devices.

It is admitted that the machine here considered comes under class 1 and is used in the operation of a legitimate business. Counsel then proceeds to argue that due to the fact that a business which is valid and legitimate in and of itself is carried on by means of a machine which under certain circumstances may be used in illegal business it is fitting and proper to tax the legitimate business by license fee to provide a fund for the inspection of said business to determine whether or not it is illegal. The fallacy of this argument is apparent. If carried to its logical conclusion it would permit the regulation of any business under the exercise of the police power, in derogation of the constituted rights of the citizens of Pennsylvania.

In the instant case, by means of the ordinance here considered, the City of Pittsburgh is attempting to exercise the police power delegated to it by the Commonwealth of Pennsylvania in order to restrict or prohibit a business which is not a proper subject for regulation

under the police power. In the case of Commonwealth v. Zasloff, 338 Pa. 457 (1940), Mr. Justice Stern analyzes the Federal cases and the law of Pennsylvania that consider police power, and expresses the law as follows (p. 460) :

"The police power, originally conceived as applying to the health, morals and safety of the people, has been juridically extended to many fields of social and economic welfare. We have become familiar with statutes fixing rates in the case of industries affected with a public interest; neither is there any novelty in legislation aimed to control prices where the object is to prevent monopoly. But in these, as in all cases, the police power is not unrestricted; its exercise, like that of other governmental powers, is subject to constitutional limitations and judicial review, otherwise we would have an absolute instead of a constitutional scheme of government. It has frequently been stated by federal and state courts alike that a law which purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained. *Mugler v. Kansas*, 123 U. S. 623, 661; *Chicago, Burlington & Quincy Railway Co. v. Drainage Commissioners*, 200 U. S. 561, 593; *Nebbia v. New York*, 291 U. S. 502, 525, 537, 539; *Mahon v. Pennsylvania Coal Co.*, 274 Pa. 489, 497; *White's Appeal*, 287 Pa. 259, 265; *Breinig v. Allegheny County*, 332 Pa. 474, 483. 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations': *Lawton v. Steele*, 152 U. S. 133, 137; *Otis v. Parker*, 187 U. S. 606, 608; *Burns Baking Co. v. Bryan*, 264 U. S. 504, 513."

Counsel for the city has also taken the position that a police power ordinance is valid even though it discriminates between modes of doing the same type of business.

This is not the law. In 3 McQuillin on Municipal Corporations (2d ed. 1928), sec. 953, the general requisites of valid police ordinances are summarized as follows:

"Likewise the rules elsewhere given forbidding the delegation of power, legislative or otherwise, discriminations in any form either directly or indirectly as to persons or classes, and oppressive and unreasonable regulations, conferring arbitrary power or unnecessarily interfering with natural or common rights, must be duly observed in the enactment and enforcement of police regulations. The police ordinance must prescribe a general and uniform rule and conditions for the regulations, to which all similarly situated may conform. It must be definite and certain in expression. It must not infringe the constitutional guarantees of the nation or state, invade personal or property rights, deny due process of law or equal protection of the laws; must conform to the constitution and general laws of the state, unless as to the latter the constitution or the laws otherwise permit; and must observe good faith in its enactment and show clearly a substantial and a reasonable relation to the maintenance of the health, morals, peace, safety, order and general welfare of the community."

It is thus apparent that a police ordinance cannot discriminate between modes of doing the same type of business.

Examining the ordinance here considered, in the light of the authorities and decisions brought to the attention of the court by counsel, it is our conclusion that the instant ordinance is a tax ordinance under the guise of the exercise of police power.

2. *If a police power measure, is it invalid as being an unwarranted regulation which in this case has no relation to public health, safety, or morals?*

If the instant ordinance is to be construed as a police power regulation, it is invalid as being an unwarranted regulation which in this case has no relation to public health, safety, or morals. The Charter Act of 1901,

art. XIX, empowers the city to license and collect a license tax "from skating rinks, operas, theaters, concerts, shows, circuses, menageries, and all kinds of public exhibition for pay . . .; to regulate the same, and to restrain all exhibitions of indecent or immoral character." The licensing of a vending slot machine does not come within this clause. Clause XLIII contains a general authorization in addition to special powers theretofore granted "for the maintenance of the peace, good government, and welfare of the city, and its trade, commerce and manufactures." Under the normal rules of statutory construction, a specific provision for police power licensing having been contained in the act, the general language of the final clause would not permit the licensing of other things. But even if it is to be held that this is permitted and that the city, for the protection of public welfare, safety, morals, and health, may exercise its police power, we would be constrained to hold that the present ordinance as applied to the facts of the instant case does not have as its object any of these purposes. The regulation of vending slot machines in and of itself is not a matter that centers about public safety or welfare.

In the leading case of White's Appeal, 287 Pa. 259, it is held that the exercise of police power "must have a substantial relation to the public good within the spheres held proper." Where legislation is to be upheld as a valid exercise of police power, it must be regulatory in character and the fee imposed must be of such size as to indicate clearly that the act was intended to be regulatory and not to provide revenue. A revenue measure otherwise invalid cannot be permitted to stand under the guise of a police power regulation.

In the case of Borough of Bellevue v. Haller Baking Co., 83 Pitts. 197 (1935), this court had before it the validity of a hawking and peddling license as applied to a baking company. Among other points decided in that case, it was held (pp. 208, 211) that the ordinance could not be sustained under the general police power of the borough. The court said that the State had by legislation imposed health

regulations upon bakeries, and that it was impossible to see how the morals or safety of the citizens could be jeopardized by defendant's method of doing business. In addition, it was held that the amount of the license fee imposed was not a reasonable exercise of the police power. This case was followed by the Superior Court in Haller Baking Co. v. Rochester Borough et al., 118 Pa. Superior Ct. 501 (1935), wherein a similar ordinance was held invalid.

If the present ordinance is in fact a tax, then it may well be said that it is a tax in the guise of a police power measure. If it is meant to be a police power measure, then it is not only not a proper subject for such regulation, but also imposes a fee which under the circumstances is unreasonable in amount, since the record shows that as to this defendant no investigation or regulation was made by the city authorities.

Finally, we quote from the well-known case of Lawton v. Steele, 152 U. S. 133 (1894) :

"The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

3. *If a revenue measure, is it unconstitutional for the reasons that (a) Its title is defective? (b) It is discriminatory and lacking in uniformity? (c) It is confiscatory?*

Considered as a revenue measure the instant ordinance is unconstitutional for the reasons that its title is defective; it is discriminatory and lacking in uniformity; and it is confiscatory.

### (a) Defective Title

The title of the instant ordinance mentions neither a tax nor a fee. The word "license" alone is used. While it

is true that article III, sec. 3, of the Constitution does not apply to municipal ordinances, section 3 of the Act of May 23, 1874, P. L. 230, does apply to ordinances of the City of Pittsburgh, and that section is phrased in the identical language of the constitutional provision:

"No bill shall be passed containing more than one subject, which shall be clearly expressed in its title." In our judgment, the word "license" does not in and of itself include the imposition of a tax or a fee. If the purpose of the ordinance is to impose a tax or fee that matter should have been stated in the title: Commonwealth v. Pure Oil Co. et al., 303 Pa. 112 (1939) ; Equitable Gas Co. v. City of Pittsburgh, 82 Pitts. 389, 391 (1934).

### (b) Discriminatory and lacking in uniformity

Both under the State Constitution and the Federal Constitution the test of justified classification is " 'whether it produces diversity in results or lack of uniformity in its operation, either on the given subject of tax or the persons affected as payers. . . . Classification cannot be made arbitrarily . . . [It] must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis . . . Classification . . . is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes' ": Commonwealth v. Girard Life Ins. Co., 305 Pa. 558, 562 (1932) ; Juniata Limestone Co., Ltd., v. Fagley et al., 187 Pa. 193 (1898).

It is conceded that the legislative authority—whether the State legislature or the council of a municipality acting under delegated authority—has wide discretion in classifying subjects of taxation. The fact that ruinous competition may result to a taxpayer therefrom does not in and of itself invalidate the law as an arbitrary and unreasonable classification: Commonwealth v. Lukens, 312

Pa. 220 (1933). But where this principle of law has been applied there have been fundamental differences between the subjects taxed and the subjects not taxed which justify classification. In the instant case there are no such differences. Mr. Bradley is called upon to pay a tax because he sells candy, nuts, and chewing gum in various industrial and business locations by means of an automatic machine. The tax here seems to be on the mode of vending. Other corporations and persons engaged in the same business who may sell candy, nuts, and gum by means of the ordinary retail storeroom or counter in a storeroom are not required to pay the tax. The difference between the two classes of merchants is not in the merchandise dispensed but in the mode of dispensing it. We can see nothing that justifies the imposition of a license tax by the city on the one method of conducting a business and not on the other.

We cite herewith leading cases in which this proposition has been exhaustively considered. The leading case on the subject is Seattle v. Dencker, 58 Wash. 501, 108 Pac. 1086 (1910), where the court held unconstitutional an ordinance which levied a license fee upon any automatic device used to sell goods. Defendant in that case operated cigar vending machines. In construing the law, the court said:

"The question for determination here is the validity of the ordinance. It is conceded that this ordinance is a revenue measure; that the only ground of difference between licensed and unlicensed sales in this ordinance is in the mode of sales, whether by device or hand. It is conceded that none of the other retail merchants of that occupation are taxed by licenses for the sale of cigars; that if the sale is by this device the license is imposed, and that if it is by hand, in the ordinary way, no license is required.

"In the discussion of this question there are certain fundamental principles which may be conceded, viz: That it is a well-known attribute of sovereignty to tax oc-

cupations for the purpose of raising revenue, and that such tax may be imposed in the form of a license fee; that the state may tax all or any occupations or business carried on within its boundaries, imposing the burden upon some and passing by others; that only considerations of general policy determine such selections, and that there is no restriction unless it be imposed by the constitution. This determination, however, must not be exercised arbitrarily or fraudulently, and while the policy of the enactment may not be questioned by the courts, the discretion exercised by the law-making power must be natural and reasonable, and consistent with the general principles of law and the fundamental principles upon which our government is founded. When these principles are violated to the extent of depriving the citizen of natural or constitutional rights, it is the duty of the court to intervene in his behalf. A wilderness of authority might be cited on this interesting and fruitful subject of litigation; for, from the beginning of not only our government but of all government, the contest has been waged between legislative powers and individual rights. But from the best considered cases, the general principles above announced can be deduced.

"Tested by these principles, can this ordinance be sustained? We think not."

Of similar import is the case decided by the Supreme Court of California, namely, In re Application of Richardson, 170 Cal. 68, 148 Pac. 213 (1915), in which case the court held invalid a license tax on vending slot machines levied by a San Francisco ordinance similar to the instant case, saying:

"The license-tax attempted is one solely on his *mode* of making his sales and deliveries, without any reference whatever to the amount of business done. If he uses such a machine, or machines, for that purpose, he must pay a license-tax of two dollars per annum for each machine so used. If he sells and delivers the very same merchandise in any other manner, he is not required to pay any license-

tax at all. It is elementary that there must be equality and uniformity in the imposition of license-taxes for revenue purposes, and that any classification providing different charges for those engaged in the same business, a charge for some and exemption for the others, must be one founded upon some natural and reasonable distinction pertinent to the matter. So, different charges may be imposed on those engaged in the same business, proportioned to the amount of business done, estimated in many different ways (see *Ex parte Lemon*, 143 Cal. 558 [65 L. R. A. 936, 77 Pac. 455]; *Bramman v. City of Alameda*, 162 Cal. 648, [124 Pac. 243], and this is the usual basis of any difference in the amount of charge on those engaged in the same business. But, and we are now speaking solely of revenue taxes, we know of no principle that warrants the imposition of a tax on some of those engaged in a certain business solely because of the method they use in making their sales and deliveries, and the exemption of all engaged in the very same business who do not use that method. We are speaking, of course, of methods not involving any occupancy or use of public property, such, for instance, as the use by wagons of a public highway. A tax thus imposed is really one solely on the method used by the merchant, and not on the business, a tax of the same nature as would be one imposed on a tradesman solely because of his use in making sales of such articles as a computing scale, a cash register, a cash carrier or some other such modern device. A difference in such mere methods of making sales and deliveries does not furnish a proper basis for classification of vendors of merchandise. . . ."

In the recent case of Automatic Vending Sales Co. v. City of Johnstown, 19 D. & C. 474 (1933), Judge Greer of the Common Pleas Court of Cambria County held a similar license tax on vending machines to be illegal upon the ground that the ordinance was both discriminatory and confiscatory, saying:

"To impose a license tax of the nature defined in this ordinance would be unlawful: First, because it would be

discriminatory; and, secondly, because it would be unreasonable. It is discriminatory in that it imposes a tax differently rated upon persons engaged in the same business. It is unreasonable because it undertakes to impose a tax in a sum beyond the maximum allowed by law. For illustration: A department store merchant in this age of ever-increasing invention might install a device similar to the one in discussion for each of 1,000 articles, for which he would be assessed under this ordinance the tidy sum of $25,000 annually. Such a method of obtaining revenue is doubtless highly alluring, but unfortunately one that has not yet received the sanction of law. Under the present tax, plaintiff would have 50 machines for which he would pay annually into the treasury the sum of $1,250. Such accumulation is not permitted: Cupp Grocery Co. v. Johnstown, 288 Pa. 43. This would be 'to pile Pelion on Ossa' with a vengeance. Merely to state the case in its barest outline is to give it instant refutation."

The ordinance in question fails to measure up to the constitutional standing of equality and uniformity. It seeks to exact from defendant merely because he utilizes machines to merchandise his goods an added tax or burden as contrasted with the ordinary dealer who sells the same merchandise over the counter. As both defendant and his competitor pay a mercantile license tax, it is in effect double taxation applied to defendant. In our judgment discrimination such as is effected by the instant ordinance is in conflict with the laws of the State and the provisions of State and Federal Constitutions.

It is to be noted that, while the instant ordinance purports to require licenses and the payment of license fees with respect to vending slot machines *selling* any and all kinds of merchandise, there is, however, a so-called exception in favor of sanitary napkins, although all other articles of toilet which may be sold by such machines are specifically included. There is seemingly no valid basis for this exception. Standing alone, this, in our judgment, is sufficient to invalidate the ordinance: Commonwealth

v. Snyder, 182 Pa. 630 (1897) ; Commonwealth, to use, v. Clark, 195 Pa. 634 (1900).

It is, therefore, our conclusion that the tax is discriminatory and lacking in uniformity and is, therefore, in violation of article I, secs. 9 and 10, and article IX, sec. 1, of the Constitution of the Commonwealth of Pennsylvania, and section 1 of the fourteenth amendment to the Constitution of the United States.

### (c) Confiscatory

The tax is also, in our judgment, arbitrary, unreasonable, and confiscatory. Under the evidence established by defendant in this case, the total gross sales by means of canteens wherever located amounted to $200,000, the bulk of this being candy sales. The cost of sales amounted to $116,000. He employed approximately thirty people to service some 3,300 canteens, 1,200 located in the City of Pittsburgh at 479 different locations. The expense of operating the business in 1939 was $78,000, leaving a net profit of $3,384. Had defendant been obliged to pay the license tax imposed by this ordinance in 1939, his net profit would have been reduced $1,200 on the entire business done. The net profit attributable to Pittsburgh alone in 1939 was $1,128. Payment of the license fee would have resulted in a net loss to the Pittsburgh business of $72.

Exhibit no. 2 introduced by defendant was an analysis of profit per canteen per year. This disclosed the average profit as very small. No canteen, except the candy canteen which has five selections, earned as much as $1. In other words, the tax would result in a loss with respect to each canteen, except the special candy canteen, and in that case the profit would have been reduced from $1.84 to $0.84, an insufficient profit to counteract the loss on other machines.

The Dencker, Richardson, and Automatic Vending Sales Company cases, which we have cited heretofore on the issue of discrimination, also held statutes similar to the instant statute to be unconstitutional on the ground

that they were confiscatory. Where the effect of a license fee is to drive an otherwise honest and legitimate business enterprise out of business, the courts of Pennsylvania have held such license fees to be illegal. This court has passed on this proposition in the case of the Borough of Bellevue v. Haller Baking Co., 83 Pitts. 197 (1935), where the ordinance, providing a license fee which was deemed to be excessive, was held unconstitutional. The Superior Court, in Haller Baking Co. v. Rochester Borough et al., supra, held an ordinance similar to the one passed upon by this court in the Borough of Bellevue case to be unconstitutional as it in effect operated to confiscate the property of defendant and to drive a legitimate business out of operation. Judge Stadtfeld, for the court, stated this rule succinctly in the following language (p. 509) :

"The rule that a municipality may impose a fee in excess of the mere cost of issuing the license, or of policing the business, has this limitation that if the business be not injurious, and not against the public interest, the fees cannot be so excessive as to be prohibitive. Either the borough of Rochester is intending to license a legitimate business by reasonable fees, or is intending to suppress an injurious business by prohibitive fees.

" 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts.'—Lawton v. Steele, 152 U. S. 133."

*A revenue measure under guise of police power*

It is a fundamental proposition of Pennsylvania law that a revenue tax may not be imposed under the guise of a police regulation, and if the amount of a license fee is as here disproportionate to the proper regulation of the business which is sought to be regulated, the license tax

will fall: Rock v. Philadelphia et al., 127 Pa. Superior Ct. 143 (1937) ; Commonwealth v. Rosenbloom, 12 D. & C. 397 (1929) ; Arronson et al. v. City of Philadelphia et al., 16 D. & C. 427 (1932) ; Pittsburgh Poster Advertising Co. v. Borough of Munhall, 63 Pitts. 276 (1915).

The principles of law in Pennsylvania with regard to the ability to impose a license tax in the guise of police power are ably summarized in the Rock case, which was affirmed per curiam by the Supreme Court in 328 Pa. 382 (1938). Judge Cunningham, for the Superior Court, stated as follows (p. 147) :

"A revenue tax may not be imposed under the guise of a police regulation, and this principle applies equally to the state or a municipality as a subdivision thereof. As Mr. Justice Elkins stated in *Kittanning Boro. v. American Natural Gas Co.*, 239 Pa. 210, 86 A. 717: 'If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax'. There it was held that an ordinance providing for a fee of $30 per mile for inspection of underground mains of the gas company was properly submitted to the jury on the question of reasonableness of the fee imposed; a verdict for plaintiff in the same case was affirmed—247 Pa. 65, 93 A. 15. In *Pittsburgh Rys. Co. v. Pittsburgh,* 211 Pa. 479, 60 A. 1077, the court held an ordinance imposing a charge of 25 cents per foot on all street car tracks within the city invalid as being a tax and not a license fee. *Postal Telegraph-Cable Co. v. Taylor,* 192 U. S. 64, 48 L. ed. 342, 24 Sup. Ct. 208, is a case in which a 'license fee' of twenty times the amount of the probable cost of inspection was held unreasonable as a matter of law and declared invalid because it was a tax rather than a police regulation. See also *Haller Baking Co. v. Rochester Boro.,* 118 Pa. Superior Ct. 501, 180 A. 108, where this court held 'license fees' amounting to $1,440 per year, which were aimed at bakers and other tradesmen from

outside districts who had delivery routes within the borough, were really an assessment for tax purposes and not a means of regulation under the police power. The distinction between a license fee imposed under the police power for the purpose of regulation and a tax imposed for revenue is set forth at length in *State v. Anderson*, 144 Tenn. 564, 234 S. W. 768, 19 A. L. R. 180. As stated in 4 Cooley on Taxation (4th Ed.) page 3552, Sec. 1809, 'A fee for the license . . . must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers.' "

Reviewing the instant ordinance, the decisions, and the law as herein set forth, we conclude that the said ordinance, in its application to the business of the within defendant, is invalid for these reasons:

1. The business sought to be regulated is not subject to regulation under the delegated police power of the City of Pittsburgh. No Pennsylvania authorities have been submitted by the prosecution which permit the regulation of such a business under the police power. In order for a business to be subject to such regulation it must be a business not like the present business, but one affected with a public interest.

2. Assuming that the business of vending general merchandise such as candy, nuts, and gum is a business and subject to regulation under the police power, the present ordinance is unconstitutional in that it discriminates arbitrarily and unreasonably between methods of doing business.

3. Again assuming that this business is subject to regulation, the present ordinance is unconstitutional in that it is confiscatory and deprives defendant of his property without due process of law.

4. There is no authority under the Charter Act of the City of Pittsburgh for exacting a license tax or fee from a business of the present type.

*Order of court*

And now, September 30, 1940, motion ex parte defendant to quash the information is granted, defendant is discharged, and restitution of fine and costs ordered. Costs of proceedings to be paid by the City of Pittsburgh.