Pittsburgh *v.* Kane, Appellant.
Pittsburgh *v.* Rettinger, Appellant.
Pittsburgh *v.* Madigan, Appellant.

Argued April 19, 1940.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and HIRT, JJ.

*Clyde P. Bailey,* for appellants.

*Thomas E. Barton,* Assistant City Solicitor, with him
*Wm. Alvah Stewart,* City Solicitor, for appellee.

OPINION BY KELLER, P. J., July 19, 1940:

These appeals are from judgments of the County
Court of Allegheny County, following hearings on ap-
peal from summary convictions before an alderman.

They are concerned with summary proceedings,
brought under section 71 of the Act of June 7, 1901,
P. L. 493, as amended by Act of March 31, 1937, P. L.
168, to enforce the penalties prescribed in that section
for alleged violations of certain provisions of the Act.

Kane and Rettinger were separately charged with vio-
lating section one of the said act, which makes it un-
lawful for any persons to carry on or work at the busi-
ness of plumbing or house or building drainage, until
they have been licensed and registered as plumbers.
The specific complaint against them was that, although
they were not plumbers, they had installed waste-pipes

to air conditioning units—Kane at the Western State Psychiatric Hospital and Rettinger at 506 Market Street— and that such installation was plumbing work. The charge against Madigan was that he had violated section 64 of the act aforesaid (53 PS §2622), which provides, "No person, firm or corporation, carrying on the business of plumbing and house drainage, shall allow his or their name to be used by any person, directly or indirectly, either to obtain a permit or permits or to do any work under his or their license"—the complaint alleging that he, a licensed plumber, had allowed Rettinger, who was not a licensed plumber, to install an air conditioning unit, under Madigan's name.

The printed record shows no evidence whatever on which a conviction of Rettinger and Madigan respectively can stand. Their names are not mentioned in that record. Nor do the original records filed in this court contain testimony of any acts done by them supporting these proceedings. However, as the opinion of the judge of the court below contains the following: "The defendant Rettinger, at C-867 of 1939, installed waste pipe on an air conditioning unit, without having first obtained a license, at 506 Market Street, in the City of Pittsburgh. The defendant Madigan, at C-869 of 1939, knowingly allowed and permitted Rettinger *to do the air conditioning installation* [1] at 506 Market Street," we shall consider the case as if there were evidence in the record supporting this statement of the judge.

The dispute is really one between plumbers and steam fitters as to the right of the latter, who are lawfully engaged in the work of installing air conditioning units in buildings, to equip them with waste-pipes to carry away the condensed moisture collecting therein.

The Act of 1901, supra, is entitled "An act provid-

---

[1] Italics supplied. This was not what he was charged with in the complaint.

ing for the examination, licensure and registration of persons, firms or corporations engaged or engaging in the business or work of plumbing or house drainage, and prescribing certain rules, regulations and requirements for the construction of plumbing, house drainage and cesspools, in cities of the second class, and imposing fines, penalties and forfeitures for violation thereof." It was amended in 1909 (Act of May 14, 1909, P. L. 840), inter alia, so as to extend its provisions to cities of the third class having a system of water supply and sewerage; and in 1937 (as above) so as to extend its provisions to certain boroughs, incorporated towns and townships of the first class, and to include building drainage.

The portion of the regulations, etc., prescribed in the Act of 1901, supra, material to this case, is as follows:

"Safe and Refrigerator Waste-pipes.

"Section 33. Safe waste-pipes must not connect directly with any part of the plumbing system. Safe waste-pipes must discharge over an open, water supplied, publicly placed, ordinarily used sink, placed not more than three and one-half feet above the cellar floor. The safe waste from a refrigerator must be trapped at the bottom of the line only, and must not discharge upon the ground floor, but over an ordinary portable pan, or some properly trapped, water supplied sink, as above. In no case shall the refrigerator waste-pipe discharge over a sink located in a room used for living purposes.

"The branches on vertical lines must be made by 'Y' fittings, and be carried to the safe with as much pitch as possible. Where there is an offset on a refrigerator waste-pipe in cellar, there must be cleanouts to control the horizontal part of the pipe.

"In tenement and lodging-houses the refrigerator waste-pipes must extend above the roof, and not be larger than one and one-half inches, nor the branches

less than one and one-quarter inches. Refrigerator waste-pipes, except in tenement-houses, and all safe waste-pipes, must have brass flap-valves at their lower ends. Lead safes must be graded, and neatly turned over beveled strips at their edges."

As amended by the Act of 1937, supra, the *body* of the section—the *heading* was not changed or amended—reads as follows:

"Section 33. Safe or special waste-pipes must not connect directly with any part of the plumbing system. Safe or special waste-pipe must discharge over an open, water supplied, publicly placed, ordinarily used sink, placed not more than three and one-half feet above the cellar floor.

"The waste from a refrigerator, soda fountain, refrigerator case, or bar fixture must be trapped with suitable traps, and must not discharge upon the ground floor, but over an ordinary properly trapped, and vented water supplied sink, as above. In no case shall the special waste-pipes discharge over a sink located in a room used for living purposes.

"The branches on vertical lines must be made by 'Y' fittings, and be graded with as much pitch as possible. Where there is an offset on a waste-pipe, there must be clean-outs to control the horizontal part of the pipe.

"In tenement and lodging-houses the refrigerator waste-pipes must extend above the roof, and not be larger than one and one-half inches, nor the branches less than one and one-quarter inches. Lead safes must be graded, and neatly turned over beveled strips at their edges.

"Fixtures or appliances drained by safe or special waste-pipes include such fixtures as soda fountains, refrigerators, refrigerator cases, bar fixtures, ice boxes, bottle coolers, steam tables, glass washers, rinsing sinks, barn maries, air conditioning units, sprinkler system drains, house-tanks, small or portable drinking fountains, coffee urns and sterilizers."

By referring to section 65 of the act as amended, p. 186, we find, "The term 'safe or special waste-pipe' is supplied [sic] to any waste pipe receiving the discharge from any fixtures or drainage appliance, with or without water supply, not connected directly with the drainage system."

It is apparent that in amending section 33 of the Act of 1901 the draftsmen of the Act of 1937 did not fully understand what a 'safe waste-pipe' was. A good deal of confusion in regard to it existed in the minds of the witnesses on the hearing. Recourse to the heading, which preceded the body of the section, and which was not affected by the Act of 1937, would have cleared up the difficulty. The heading is, "Safe and Refrigerator Waste-pipes." On consulting the dictionary we find the word 'safe' defined as follows: "3. A receptacle for the storage of meat and provisions." (Century Dictionary), "A receptacle for the safe storage of articles; especially, a. A ventilated chest or cupboard for provisions; a meat safe" (Shorter Oxford Dictionary). "1. A place or receptacle specially designed for safe-keeping; as: ...... 6. A ventilated or refrigerated chest or closet for securing provisions from noxious insects, etc., and from the effects of the weather ......" (Webster's New International Dictonary).

It is apparent, therefore, that those who drafted the original Act of 1901 were not referring to the adjective 'safe' meaning free from harm or risk; sound; conferring safety; not dangerous, etc., but rather to an *appliance,* akin, or of a similar nature, to a refrigerator; and that the section referred to waste-pipes leading from safes and refrigerators for the purpose of draining them. We are so accustomed to think of a 'safe' as being a receptacle for the safekeeping of money and valuables, that its meaning as a receptacle for the 'safe' storage of meat and provisions, similar to a refrigerator, has been largely overlooked by the general public; but it was clearly in the mind of the draftsmen of the Act

of 1901, for in the second paragraph, it refers to 'the safe'. It was probably taken from the statute of another jurisdiction dealing with the subject.

Those who drafted the amending Act of 1937, when extending or applying its provisions to other appliances or itemizing the appliances embraced within it, overlooked the heading or title of the section by which its body was to be limited, for while most of the appliances enumerated in the section come within the category relating to Safe and Refrigerator Waste-pipes, several of them, and notably, air conditioning units, do not. Nor is it likely that the ordinary man, reading the title of the act, would be put upon notice that the installation of an air conditioning unit or a sprinkler system was embraced within an act providing for the examination, licensure and registration of persons, etc., engaged in the business or work of plumbing, house drainage or building drainage, and prescribing rules, regulations and requirements for the construction and reconstruction of plumbing, house drainage, building drainage and cesspools. The very section relied on specifically provides that the waste-pipes included in section 33 "must *not* connect directly with any part of the *plumbing system*" [1]—thereby recognizing that they are not part of the plumbing; and house drainage or building drainage relates to drainage from the house or building carrying away sewage and waste water from the house or building to sewer or cesspool; and section 65, paragraph 8, limits the term 'safe or special wastepipe' to one not connected directly with the drainage system.

It seems clear to us that in the regulations relating to 'Safe and Refrigerator Waste-pipes' and to the 'safe or special waste-pipes', prescribed in section 33 of the Act of 1901 and the amending Act of 1937, (which are expressly *prohibited* from being *connected* with plumbing and house or building drainage systems—the exclu-

---

[1] Italics supplied.

sive province of plumbers) it was not intended to grant to plumbers the sole right or privilege of fitting waste-pipes to the appliances mentioned therein, to the exclusion of steam-fitters and pipe-fitters, who are just as competent to make such fittings or connections, but that its object and purpose was to *prohibit* plumbers, or anybody else, from making any connections between such appliances and any sink, drain, or other part of the plumbing or drainage systems, whereby, by any possibility, any foul or impure air, odor, etc., might be conducted or have escape from the drain or sewer into the appliance used for the storage and protection of meat, provisions, beverages, etc. The section contains no words bestowing the grant of any exclusive right or privilege on plumbers. It is *prohibitive,* and it forbids plumbers, as well as all persons who may install any of the appliances mentioned in the section, from connecting any waste-pipe, used to discharge moisture or water from the appliance, with the plumbing or drainage system, which the act declares is within the exclusive province or function of licensed and registered plumbers.

Furthermore, section 71 relating to penalties for violations of the act, does not authorize summary proceedings for any and every violation of its provisions. It covers only the following:

(1) Failure to comply with the provisions regarding the procuring of a license or certificate to engage in or work at the business of plumbing, house or building drainage. We have shown that these appellants were not guilty of that, for their work in installing the air-conditioning plant was neither.

(2) Violation of the rules, regulations or requirements set forth in the act regarding the construction, reconstruction or testing of plumbing, house or build-

ing drainage or cesspools, or water connections [2] to private or public fixtures or equipment. It was not shown that the defendants had done any of these.

No penalty is prescribed in section 71, or elsewhere, for a violation of section 64. Hence no ground existed for any of these summary convictions and the defendants should have been acquitted and discharged.

The record shows that the air conditioning plant installed by these defendants complied with the regulations, etc. prescribed for Safe and Refrigerator Waste-pipes and for special waste-pipes from air conditioning units. The waste-pipes were not connected directly with any part of the plumbing system or with the house or building drainage system. They discharged over an open, water supplied, properly trapped drain in the cellar.

The real point involved was whether these defendants who installed the air conditioning unit could connect it with a pipe which would carry away the condensed moisture that was collected from the humid air in the course of its conditioning and conduct it so that it would drip or empty over and into an open sink or drain which had been properly installed by a plumber. Admittedly they could have made no connection with any drainage system, nor did they do so. Their work was no more plumbing than the man who takes the

---

[2] It is to be noted in this connection that the word 'water' which was inserted in paragraph 6 of section 2 by the amending Act of 1937, supra, (p. 172, ninth line from the bottom of the page), so as to provide that no person other than a registered master plumber, or a registered journeyman plumber in his employ, should be allowed to make any connection with any *water,* drain, soil, waste or vent-pipe, has been amended by the Act of May 26, 1939, P. L. 232, (effective immediately), following the decision in *Com. v. Leswing,* 135 Pa. Superior Ct. 485, 5 A. 2d 809, by striking out the word 'water' and limiting the prohibition to the *repair or alteration of the location* of any water pipe. The penal provisions relative to *water connections* would be correspondingly modified.

"portable pan" into which water drips from an ice refrigerator and pours it into a sink is engaged in plumbing.

However, at the argument, one was tempted to ask why these steam fitters who constructed these air conditioning units, in order to avoid any threatened trouble, did not employ a plumber to connect the discharge pipe to it; and on doing so, we were informed that the rules governing plumbers in the City of Pittsburgh forbade them making any such connection to work done by a steam fitter—that a plumber must do the whole job or none—and the statement was not denied or qualified by opposing counsel.

It is time that people who enjoy special privileges at the hands of the General Assembly, whether they practice professions, such as lawyers, physicians, dentists, nurses, engineers, etc., or are engaged in a business regulated to some extent by statute, such as plumbers, bakers, barbers, etc., should understand and recognize that these privileges are not granted primarily for the benefit of the persons licensed or authorized to pursue said business or profession, etc., but for the benefit and well-being of the public, in order that it may be competently and properly served. That is the only constitutional ground for their enactment. Courts should not be astute to assist persons who mistake the purpose of these statutes and use them to the injury of the public rather than for its advantage.

The judgments are severally reversed and the defendants discharged.