## Plumbers Union Local No. 690 Appeal

*Edward Davis*, for appellant.

*Manus McHugh*, for appellee.

ALEXANDER, J., July 5, 1961.—This is an appeal from a decision of the Board of License and Inspection Review of the Department of Licenses and Inspections of the City of Philadelphia. This matter was brought before the board by means of an appeal from the action of the said department which required that certain work being done by appellant, Joseph R. Farrell, Inc., be performed by registered or licensed plumbers.

It was agreed by stipulation, approved by the court, that Joseph R. Farrell, Sr., Joseph R. Farrell, Jr., Laborers' District Council of Philadelphia and the Metropolitan Area of Philadelphia and Vicinity, the Contractors' Association of Philadelphia and Eastern Pennsylvania, the General Building Contractors' Association and the Pennsylvania Society of Professional Engineers intervene as parties in this appeal. On October 19, 1960, upon the motion of appellees, with a petition annexed thereto, a rule to show cause why the exceptions filed by local 690 should not be dis-

missed was granted. This petition was withdrawn without prejudice on October 31, 1960.

There is no substantial dispute with respect to the factual background out of which this appeal arises. In 1958, the Farrell Company contracted to construct a new medical research laboratory building on ground owned by the University of Pennsylvania in Philadelphia for the university.

Specifications and plans for the building were prepared by various architects and engineers. A part of the work to be done involved the installation of drains beneath the ground surface outside of the walls and foundations of the structure. Plans for these drains were prepared by a licensed engineer and are of a type which are called subsoil, foundation or French drains. A building permit was obtained from the Department of Licenses and Inspections and, during the course of the construction, Farrell utilized members of the laborers' union for the installation of the drains.

As a result of a complaint made to the Department of Licenses and Inspections by a representative of local union 690, inspectors were sent to the site of the job. These inspectors appeared at the installation on the following day and ordered that the work be stopped on the ground that the drains should be installed by plumbers.

A bill in equity to restrain the City of Philadelphia from interfering with the performance of the construction contract was brought by appellee. However, a hearing on the preliminary injunction was continued in order to permit the required exhaustion of administrative remedies. Hence, the appeal to the board. An inspection was made of the work prior to its being covered over by the city. However, a determination as to whether the work was approved awaits this decision.

After a hearing before the board on February 18, 1959, findings of fact and an opinion were issued on

February 8, 1960. It was decided by the board that the installation in question was not plumbing within the meaning of the applicable legislation and was, therefore, not required to be done by licensed or registered plumbers.

Authority, if there is any, for the compelling of Farrell to utilize the services of plumbers to install the drains in question must come from the statute regulating plumbers, plumbing and house drainage. This legislation porvides that ". . . it shall be unlawful for any person or persons to carry on the business or work at the trade of plumbing, defined as drainage, water piping, or the construction, alteration, and repairing any drainage, cesspools, trap, waste vent, or water piping, and fixtures attached thereto, directly or indirectly, connected to the city service water supply, or any connection or connections in relation thereto ,except gas or electric water heaters in cities of the first class, having a system of sewerage and water supply, of this Commonwealth, until a master plumber's license and certificate of registration to engage in or work at said business shall have been granted said persons . . .; Provided, That the term plumbing shall not be construed to include the laying of sewers and water pipes (including the laterals) by said cities, either directly or by its duly authorized contractors or agents, or constructed under the supervision of said cities, or under the supervision of a registered professional engineer in those cases where a complete set of plans of said sewers to be constructed, and water pipes to be laid, shall have been filed with the appropriate office of said cities": Act of June 7, 1911, P. L. 680, sec. 1, as amended, 53 PS §15321.

Legislation regulating the plumbing business has been upheld frequently under the police power as protection of the health of citizens of the State: Rock v.

Philadelphia, 127 Pa. Superior Ct. 143, 146; Beltz v. City of Pittsburgh, 211 Pa. 561. A basic justification for the governmental concern in this area is the fact that certain aspects of plumbing deal with the possibility of the escape of sewer gas into the dwelling house and also with the general sanitation resulting from provisions made for drainage: New Castle City v. Withers, 291 Pa. 216, 220. These considerations are important in determining the construction to be given to the statute relied upon by appellant as prohibitive of the use of laborers to do the work in connection with the foundation or French drains.

Thus, a plain reading of the Act of Assembly, as well as an interpretation consonant with the policy and purpose of the law, lead to the conclusion that the statute applies only where the drainage or other construction is directly or indirectly connected to the city service water supply. If the installation is not connected to the city water system, the danger to the public health does not exist which is the basis for the assertion of the police power with respect to these matters. In order to ascertain the applicability of the statute to the instant case, it is necessary to examine the nature and configuration of the installations which are contended to be plumbing work.

It is not disputed that the purpose of the drains in question is to divert the flow of water away from the structure so that the interior of the building is kept dry. For this purpose, a porous concrete pipe with open joints is placed in the ground, about eight or nine feet under the surface. These drains encircle the entire building and are encased in an envelope of broken stones. They are situated above the level of the footings of the building. In the construction process, a trench is excavated which is about 2 feet wide and 8 to 10 feet deep, and a bed of stone some 4 to 6 inches

high is placed in it. Then the pipe is placed on the bed of stones and covered with stones piled 4 feet high and about 18 inches to 2 feet wide. Following this, the trench is back filled with earth.

This installation is designed so that the water is carried to a catch basin, or interceptor trap or well. In the particular construction which gave rise to this litigation, the catch basin is four feet square, is made of reinforced concrete, and serves the function of removing mud or sediment from the water draining into it before being carried off to the city sewer. Both the intake from the foundation drains and the pipe through which the water flows out to the sewer are some distance from the bottom of the interceptor pit, so that the water must reach a level high enough in the basin to reach the height of the pipe leading to the sewer before any water can flow out of the basin.

Since the plumbers or plumbing contractors are not prepared to actually construct the concrete pit or basin, this work is done by the building contractor. There is no dispute that the work of installing the connection between the catch basin and the sewer is plumbing and is done by plumbers. Therefore, in order to decide this case, it must be determined whether the fact that the water which is conducted into the interceptor pit or basin eventually is directed into the city sewer, compels the conclusion that the work of installing the subsoil or foundation drains is plumbing within the meaning of the applicable legislation.

In a case where an eight-inch water main installed by plumbers carried the city water from the street to a four-inch connection running along the ceiling of the basement of a factory, and defendants tapped this subsidiary line where valves had been installed by plumbers, it was held that the work was plumbing within the meaning of the statute: Commonwealth v. Dougherty, 156 Pa. Superior Ct. 520, 525. That case,

however, is quite distinguishable from the within matter. In that case, the water brought into the factory was discharged into tanks or vats containing mercury cyanide solution used in plating. Moreover, from these acid cooling tanks water was drained into the sewer. Obviously, the nexus with the city service water supply was much clearer, direct and productive of the danger of contamination of the public water supply than the installation here in issue. Thus, the question of the duty to protect the health and safety of the citizens of a State was clearly in issue.

That the significant factor in the case was the direct connections with the city supply is demonstrated by the fact that, in the opinion of the court, a prior case was distinguished on that very ground. In the prior case, there was dispute with respect to whether plumbers were required to install a pipe which carried condensed moisture that was collected in an air-conditioning process which conducted it so that it would drip or empty over and into an open sink or drain which had been properly installed by a plumber. It was there held that "Their work was no more plumbing than the man who takes the 'portable pan' into which water drips from an ice refrigerator and pours it into a sink is engaged in plumbing": Pittsburgh v. Kane, 141 Pa. Superior Ct. 44, 52-3.

That case would appear to have involved facts quite opposite to the problem posed in the instant appeal. It deals squarely and specifically with the precise problem with which this case is concerned. That is, the effect of the fact that the water conducted by the disputed installation eventually gets into a part of the plumbing system. As has been seen, it has been held that this, in and of itself, is of little effect in determining whether the work is plumbing.

Therefore, the fact that the water which is collected by the foundation drains above described, and poured

into the interceptor pit or basin, is then taken off into the sewers by means of plumber installed pipes, does not result in the conclusion that the drains are connected with the city water supply. Applying the very pertinent example quoted from the opinion of the Superior Court, the French drains are like the "portable pan" and the catch basin is like the sink into which it is poured.

In a case which involved the right of the city to have other than registered plumbers set water meters on the premises of property owners, it was held that the "setting" operation is "not the performance of a plumbing function within the meaning of the plumbing code": Vitacolonna v. City of Philadelphia, 2 D. & C. 2d 761, 784, affirmed per curiam, 382 Pa. 399. It is significant that the "setting" operation involves a shutting off of the water supply, removal of the spacer and temporary filler pipe and fitting or setting the meter in place and turning on the water. It would seem that this work more intimately involves an integral part of the water system than the installation of subsoil or foundation drains.

At the hearing before the board in this case, there was considerable proof adduced with respect to the practice and custom of contractors as to the type of labor utilized in the construction of French drains on other projects in the Philadelphia area. Of course, what the prior practice had been is not controlling. If, in fact, the work is required to be done by plumbers by the applicable statute, the fact that the law may have been broken repeatedly on previous occasions is no reason to hold that it may not be enforced in this case.

On the other hand, the fact that plumbers had been used to do this work on other jobs is no basis on which to conclude that they *must* be used. This evidence as to the practice on previous projects may be material

as to whether labor, other than plumbers, are actually competent to perform the work. On this question, however, there does not seem to be any serious dispute that the drains were competently and properly installed.

Although it is not completely determinative, an important factor in this type of case is the actual or potential danger to the public health and safety of the facilities installed. This is because the constitutional justification and basis of the legislation which requires that certain functions be performed only by plumbers is the real and substantial relation to public health: Commonewalth v. Leswing, 135 Pa. Superior Ct. 485, 490.

In this connection, it should be noted that the evidence discloses that any effect on the public health of the subsoil drains would be extremely speculative and conjectural. Another consideration is that, as far as the record shows, the installation of the porous pipe which constitutes the drains in question requires little, if any, of the special skills, training and experience of registered or licensed plumbers.

A realistic analysis of the factual background of this case demonstrates that the dispute arises not so much from the desire of the city to enforce the law, as it does from the efforts of the plumbers to assure themselves of this type of work on all construction projects. Under the circumstances, it may be appropriate to repeat the admonition of our Superior Court in Pittsburgh v. Kane, supra, at page 53, that "it is time that people who enjoy special privileges at the hands of the General Assembly, whether they practice professions, such as lawyers, physicians, dentists, nurses, engineers, etc., or are engaged in a business regulated to some extent by statute, such as plumbers, bakers, barbers, etc., should understand and recognize that these privileges are not granted primarily for

the benefit of the persons licensed or authorized to pursue said business or profession, etc., but for the benefit and well being of the public, in order that it may be competently and properly served. That is the only constitutional ground for their enactment. Courts should not be astute to assist persons who mistake the purpose of these statutes and use them to the injury of the public rather than for its advantage."

Therefore, for the foregoing reasons the appeal is dismissed.