DR. GEORGE HANDY, State Health Officer, Department of Health andSocial Services
Your predecessor has requested my formal opinion concerning two questions: First, whether plumbing, as defined in sec. 145.01 (1), Stats., includes the installation of piping attached to air-conditioning units which conveys condensate wastes to open sight drains with an air-gap connection. Secondly, whether the above section of the statutes includes, within the definition of plumbing, fire protection sprinkler systems and other similar units or appliances where a valve has been installed by a licensed plumber at the initial point of such system.
CONDENSATE DRAINS
In September of 1968 the chief of your Section of Plumbing and Related Services advised this office of the jurisdictional dispute which arose between the plumbers and steam fitters organizations with regard to whether or not condensate and other equipment drains are plumbing. Apparently your office has been interpreting the plumbing laws to apply to this type of installation over a period of more than ten years.
In the summer of 1969 an action was started by the Steam Fitters Local Union 394 of Madison against the Department *Page 75 
of Health and Social Services and the Plumbers Local Union 167 of Madison seeking declaratory judgment on the question of whether the installation of drain lines from various pieces of equipment and machinery through open sight or air-gap connections to a floor drain was considered to be plumbing. On October 13, 1969, a demurrer filed by this office in behalf of the Department of Health and Social Services was sustained by the Honorable A. W. Parnell, acting Circuit Judge of Dane County. The court at that time felt that the more appropriate forum for the taking of testimony to determine the fact questions involved was the Department of Health and Social Services. However, no request was made for such a proceeding for a declaratory ruling under sec. 227.06, Stats.
Nothing more of a formal nature took place in this controversy until August 18, 1970, when the Joint Committee for the Review of Administrative Rules held a hearing at the request of Steam Fitters Local Union 394. As a result of that hearing, the Joint Committee for the Review of Administrative Rules directed the Department of Health and Social Services to hold a public hearing within 60 days on the question of whether to adopt a rule interpreting sec. 145.01 (1), Stats., as that statute relates to "air-gap" installation of drain lines from boilers, air conditioners and similar installations.
On October 12, 1970, a hearing was held by the Department on the question presented. I understand that the answer which I give to you in this opinion will guide you in making recommendations to the Board of Health and Social Services concerning possible rules.
We have been advised that there are various types of equipment from which piping carries condensate liquid waste to open sight drains with an air gap separating such piping from the drain. However, the specific issue in this case arises in connection with the dispute between the steam fitters and plumbers as to the installation of condensate drain lines from air-conditioning equipment being installed in multistory buildings. From the knowledge that I have from our office's participation in the Circuit Court action, the Legislative *Page 76 
Committee hearing, and the hearing before the Department, I must conclude that the issue involved herein is whether the installation of condensate drain piping from air-conditioning units and like equipment where the condensate is eventually discharged into an open sight drain with an air gap between the drain and the discharge pipe, as defined in H 62.02 (3), is plumbing within the meaning of sec. 146.01 (1), Stats. The reasoning in this opinion may or may not apply to other types of equipment which drain wastes into open sight drains.
If the installation of these condensate drain lines is plumbing, it must fall within the definition of plumbing found in sec. 145.01 (1) (a), Stats., which, insofar as it is applicable to this question, reads as follows:
"All piping * * * in connection with the * * * drainage systems * * *."
Subsection (e) of that definition also defines plumbing as follows:
"A * * * drainage system so designed * * * to prevent * * * sewer air to escape into the building * * *."
The above-quoted statutory provisions remain unchanged since their enactment by ch. 431, Laws of 1931. In considering the interpretation of the statute in question we can take into consideration similar statutes and laws in other states where such language has been construed. We must also consider two conflicting rules of law. First, that the law regulating plumbing and requiring a licensed person to perform acts of plumbing is a proper exercise of the police power in the interests of public health. Josam Mfg. Co. v. State Board of Health (1965),26 Wis.2d 587, 133 N.W.2d 301; State ex rel. Winkler v. Benzenberg
(1898), 101 Wis. 172, 76 N.W. 345; 22 A.L.R. 2d 816. Secondly, that the violation of the plumbing regulations constitutes a criminal violation of the law and the law must be construed in such a way as to give the benefit of any doubt to a prospective defendant. State v. Wrobel (1964),24 Wis.2d 270, 128 N.W.2d 629.
It should be pointed out that if sec. 145.01 (1) (a), Stats., were strictly interpreted to require a plumber to install "all *Page 77 
piping, fixtures, appliances, equipment, devices and appurtenances in connection with the water supply, water distribution and drainage systems," no one but a plumber could install any kind of equipment which was directly or indirectly connected to the water supply, water distribution or drainage systems in a building. Of course, this is not the case, since Rule H 62.18 (3) (b) specifically provides that nonplumbers may make installations of steam power, heating temperature regulation, automatic fire protection, hydraulic power, and other special water usage equipment, providing the plumber has installed the piping supplying the water for such systems "* * * to the appliance forming the unit or initial point of such system and shall terminate with a valve, located at the unit or appliance to be connected." Subsection (c) of that rule further provides that the person installing said systems may connect the unit to the water supply pipe installed by the plumber in a manner "* * * to prevent the possibility of contamination of the water supply by the backflow of water from such systems by siphonage, drainage, or force." Therefore, by the Department's own interpretation of the statutes as shown by their enactment of administrative rules dealing with the very subject, there can be certain installations of equipment or appurtenances to the plumbing system and, more specifically, to the water supply by trades other than plumbers.
We are not dealing here, however, with the water supply but rather with the "drainage system." We are dealing with a condensate drainpipe designed to carry away condensed moisture which is collected from the humid air in the course of the operation of an air-conditioning system where this condensate gathers in a receptacle or receptacles and eventually finds its ways into an open drain with an air break as defined in Rule H 62.02 (2), or air gap as defined in Rule H 62.02 (3), Wis. Adm. Code, such open drain having been properly installed by a plumber with the necessary vents and traps.
A case in point was decided by the Supreme Court of Pennsylvania in 1940. In that case, City of Pittsburgh v. Kane, 141 Pa. Super. 44,14 A.2d 887, the complaint was *Page 78 
that, although they were not plumbers, the defendants had installed waste pipes to air-conditioning units at a hospital in Pittsburgh. The court said, at page 889:
"The dispute is really one between plumbers and steam fitters as to the right of the latter, who are lawfully engaged in the work of installing air conditioning units in buildings, to equip them with waste-pipes to carry away the condensed moisture collecting therein."
The regulation in question in the Kane case, insofar as it is applicable to this question, was very similar to Rule H 62.14 (3) which provides that refrigerator waste pipes must not connect directly with any drain, soil or waste pipes. The Pittsburgh regulation read as follows:
"Safe waste pipes must not connect directly with any part of the plumbing system. Safe waste pipes must discharge over an open, water-supplied, publicly-placed, ordinarily-used sink, placed not more than three and one-half feet above the cellar floor."
The court went on to conclude that the use of the word "safe" in the law did not refer to safety but rather to an appliance, which was a term in use when the law was enacted in 1901. In concluding that the installation did not constitute plumbing, the court commented as follows, at page 891:
"The real point involved was whether these defendants who installed the air conditioning unit could connect it with a pipe which would carry away the condensed moisture that was collected from the humid air in the course of its conditioning and conduct it so that it would drip or empty over and into an open sink or drain which had been properly installed by a plumber. Admittedly they could have made no connection with any drainage system, nor did they do so. Their work was no more plumbing than the man who takes the `portable pan' into which water drips from an ice refrigerator and pours it into a sink is engaged in plumbing."
A similar case was decided by the Supreme Court of Nebraska inJohn McNeil et al. v. City of Omaha et al. (1955), 160 Neb. 301,70 N.W.2d 83. In that case the plaintiffs, *Page 79 
steam fitters, sought declaratory judgment that in performing certain work in the installation of heating and air-conditioning units in a building in Omaha they were not engaged in plumbing within the meaning of the ordinances of the City of Omaha.
Again, as in the Pennsylvania case, a combination air-conditioning and heating system was being installed in a hospital and the system consisted of two large units installed in the basement. One was for heating and one for cooling water. Pipes ran from these large units to individual units placed variously about the building and returned to the basement unit.
When the equipment was used for cooling purposes, moisture from the air collected and fell from the cooling unit, and a drip pan to catch the moisture was a part of the unit. To the drip pan of each unit was fitted a pipe leading from the unit downward, and it was joined with other like-purpose pipes from other units and ultimately ended immediately over, but not physically attached to, a sewer drain in the basement. These pipes were called condensation lines. The equipment and condensate pipes were being installed by steam fitters, and under a threat of arrest the contractor took out plumbing permits when the city insisted that the installation of the condensation lines was plumbing work. The contractors then brought the action to have the law construed. The Omaha Municipal Code provided in part as follows:
"A plumbing fixture is any receptacle, appurtenance, or device or appliance connected to either a water supply or drainage system, or both, intended to receive, to discharge, or to receive and discharge water, liquid or water carried waste into an approved drainage system."
In commenting upon the above section of the Municipal Code, the court said, at page 85:
"This definition of a plumbing fixture is broad enough and indefinite enough to include these condensation pipes. It is likewise broad enough and indefinite enough to include the heating and cooling units, for they also are connected to *Page 80 
a water supply system and are intended to receive water. It does not appeal that the city has ever construed, and does not now construe, Rule 63 to cover these units of which, by undisputed evidence, the condensation lines are a necessary part."
The court then cites from the Kane case cited previously, and quotes from page 891 of the Pennsylvania court's decision which we have quoted,supra.
The court concluded, at page 85:
"In accord with the above reasoning and decision, we hold that the installation of the condensation lines as a necessary part of the heating and cooling units was not the installation of plumbing and did not require a plumbing permit."
Extensive research has disclosed no other cases in the United States dealing with the specific point concerning the installation of condensate drain lines by persons not licensed as plumbers.
In discussing these questions with members of your staff, we have been able to discover only one remote health hazard possibility in connection with the installation of these condensate drainpipes, assuming that a qualified plumber properly installs the floor drain, and that is the possibility that deleterious odors or fumes might be drawn into the condensate drain lines if proper wet traps are not provided for the condensate lines. It is speculated that carbon monoxide from engines or poisons from other sources might be drawn up these pipes in apartment buildings or hospitals and affect the occupants by such noxious or deleterious odors or fumes. However, such possibility appeals so remote and is so far removed from plumbing definitions in sec. 145.01, Stats., as not to be seriously considered. It is to be remembered that a plumbing or drainage system is to be designed so as not to permit "sewer air to escape into the building" and no mention is made of other foreign deleterious odors or fumes. It is not without the realm of possibility that noxious fumes could pass through buildings by such means as ventilating, heating and air-conditioning systems, but this appears to be a problem for the Department of Industry, Labor and Human *Page 81 
Relations in enforcing its ch. Ind 59 relating to heating, ventilating and air conditioning, and is not the responsibility of your Plumbing Section.
I must advise you accordingly, therefore, that if this matter was ever brought to court test, it is my considered opinion that the Wisconsin Supreme Court would be bound to some extent by the interpretations placed on these regulations by the highest courts of two other states in this country. Further, I must advise that the Pennsylvania and Nebraska decisions seem to be the most logical answer to the question presented, since there is a paucity of acceptable evidence that the public health would be adversely affected by the installation of these drain lines by nonplumbers. Thus, acceptable justification for the construction of the statutes and rules to include condensate waste pipes from air-conditioning units within the definition of plumbing is plainly absent.
In answer to the first question, therefore, I must conclude that the installation of condensate drainpipes to such devices as air-conditioning units, where the drainpipe empties the waste into an open sight drain with an air gap between the drain and the pipe, is not plumbing within the meaning of sec. 145.01 (1), Stats., and that the Department has no authority to adopt a rule construing the statute in question to include condensate drains within the definition of plumbing.
FIRE PROTECTION SPRINKLER SYSTEMS
The second question deals with the installation of water-related systems such as automatic sprinkler systems used for fire prevention. At the request of the State Health Officer, this office has appeared as amicus curiae in a case involving this same issue in the County Court of Wood County.
In the Wood County case, the City of Marshfield was enforcing its ordinances dealing with the installation of plumbing against the Viking Automatic Sprinkler Company, Inc., which was accused of using workmen who were not licensed as plumbers to install an underground eight-inch *Page 82 
water main and connect it to a sprinkler system which Viking had installed in a warehouse in the City of Marshfield. A yard hydrant was also installed and connected to the eight-inch water main which was tapped into an existing eight-inch water main which had been installed under the supervision of a licensed plumber who had taken out permits with the City of Marshfield. Viking had not applied for a permit.
The court in that case made a finding that the laying of the eight-inch water main from the existing eight-inch water main to the building constituted plumbing and that the defendants violated the law by not having a plumber install said main and the necessary valve and not having secured a permit to make such installation. The court made no determination as to whether the piping installed by the Viking workmen inside of the building beyond a valve at the floor level constituted plumbing within the meaning of the local ordinance or the state statute. Testimony at the hearing was in conflict on this point and, obviously, the court felt that this was not a pertinent question to be determined in that case.
The issue presented is actually one of interpretation of sec. 145.01
(1) (a), Stats., and Rule H 62.18 (3) (b), Wis. Adm. Code, and I cite theViking case only as background for this question.
The evidence in the Viking trial established that the Viking Company considered that the initial point of their sprinkler system began at the valve pit which was located between the building foundation wall and the existing eight-inch water main which had previously been installed under the supervision of a licensed plumber. The court determined, however, that all underground piping to the foundation walls was water service piping and should have been installed by a plumber. Therefore, in accordance with the court's determination, the "initial point of such system" within the meaning of Rule H 62.18 (3) (b) would most logically be at a valve just inside the building. The testimony in the Viking case indicated that there was a valve located at floor level just inside the building wall. There was also *Page 83 
testimony that the system installed in that particular building was known as a "dry system." Under that particular type of system the water is kept out of the dry pipes by air pressure, and when the fire melts the sprinkler heads the air escapes and the water enters the system.
A representative of your Plumbing Section testified at the trial that your departmental interpretation of Rule H 62.18 (3) (b) would require that all piping on the sprinkler system, including the dry system just described, would have to be installed by a plumber to the sprinkler head itself. I have been advised that the departmental interpretation since the Viking case has been that all piping to the sprinkler head itself is plumbing and must be installed by a plumber. The second question obviously is intended to clarify whether such interpretation is correct.
As I have indicated in answer to the first question, there are two conflicting rules of law in considering the construction of statutes and rules dealing with the exercise of the police power. First is the consideration of protecting public health and second is that criminal statutes must be construed most favorably toward a defendant. Violation of the plumbing laws is a criminal violation and may be punished by fine or imprisonment.
Some jurisdictions have construed their plumbing laws to prohibit a person not licensed as a plumber to make connections to the water supply or distribution system even for the installation of appliances and other devices and systems. In Commonwealth. v. Leswing (1939),135 Pa. Super. 485, 5 A.2d 809, it was held unlawful for an electrical contractor selling and installing electric hot-water heaters, but who was not licensed as a plumber, to install a unit by making a connection with a cold-water pipe on one side of the heater and, on the other, with a pipe for distributing warm water throughout the house. To the same effect, see Greene v. Loveland (1911), 51 Colo. 593, 119 P. 622. However, it appears that the majority of jurisdictions permit the installation of equipment and devices by nonplumbers where a valve has been installed by a licensed plumber. Bregman v. Winkler (1923), 120 Misc. 483,198 N.Y. Supp. 758; Garrison *Page 84 v. District of Columbia (1908), 30 App. D.C. 515; Leve v. Putting
(1917), Mo. App., 196 S.W. 1060; State v. Harrington (1941), 229 Iowa 1092,296 N.W. 221.
In the Harrington case the Supreme Court of Iowa, in holding that the defendant who was not a licensed plumber did not violate the plumbing code by installing and connecting a water softener to the water supply distribution pipe, had the following to say in regard to regulations enacted under the police power of the state:
"The regulation of an occupation in the interest of the public health, safety, and welfare is valid as a proper exercise of the police power of the state but the restraint must be reasonable and bear such a relation to the public welfare as will sustain it as a police measure. We are unable to perceive that installation by defendant would be detrimental to the public welfare or that a requirement that the softener must be installed by a licensed plumber rather than a person whose business it is to install it would bear the least resemblance to a health regulation or tend to promote the public health. Such a regulation would be an improper exercise of the police power, an unreasonable restraint on the light to follow one of the common occupations of life. The police power should be exercised to prevent injury to the public welfare."
The Supreme Court of Pennsylvania was even stronger in its warning in the Kane case, supra, at page 891:
"It is time that people who enjoy special privileges at the hands of the General Assembly, whether they practice professions, such as lawyers, physicians, dentists, nurses, engineers, etc., or are engaged in a business regulated to some extent by statute, such as plumbers, bakers, barbers, etc., should understand and recognize that these privileges are not granted primarily for the benefit of the persons licensed or authorized to pursue said business or profession, etc., but for the benefit and well-being of the public, in order that it may be competently and properly served. That is the only constitutional ground for their enactment. Courts should not be astute to assist persons who mistake the purpose *Page 85 
of these statutes and use them to the injury of the public rather than for its advantage."
As the County Court of Wood County pointed out in the Viking case in its decision, Rule H 62.18 (3) (b) seems to hold the key to the issue:
"All such piping for supplying water for any system for * * * automatic fire protection * * * shall be installed by the licensed plumber to the appliance forming the unit or initial point of such system and shall terminate with a valve, located at the unit or appliance to be connected."
The quoted rule which was adopted by the Board of Health seems to be a clear indication of a construction of ch. 145 of the statutes relating to plumbing in such a way as to permit the installation of a system for automatic fire protection by a person not licensed as a plumber if the licensed plumber has installed a valve at the unit to be connected.
I must also conclude that Rule H 62.18 (3) (b) permits the installation of other like systems by persons not licensed as plumbers, providing a valve is installed at the unit or appliance to be connected.
Of course such installation by a nonplumber must be in compliance with Rule H 62.18 (3) (c), "* * * in a manner to prevent the possibility of contamination of the water supply by the backflow of water from such systems by siphonage, drainage, or force."
RWW:LLD